[Civ. No. 57044. Second Dist., Div. Two. May 12, 1980.]

STEPHEN K., Cross-complainant and Appellant, v.
RONI L., Cross-defendant and Respondent.

COUNSEL

Brown & Brown, Meyer S. Levitt and Bradley A. Raisin for Cross-complainant and Appellant.

Dawn Tilman for Cross-defendant and Respondent.

OPINION

**BEACH, J.**—Cross-plaintiff Stephen K. appeals from a judgment of dismissal entered upon an order sustaining, without leave to amend, cross-defendant Roni L.'s demurrer to Stephen's cross-complaint in which he sought to recover general and punitive damages from Roni for the alleged "wrongful birth" of his child. We affirm the judgment.

BACKGROUND:

The minor child, its guardian ad litem, and its mother brought a paternity suit against Stephen K. (Stephen). After admitting paternity, Stephen filed a cross-complaint "for fraud, negligent misrepresentation and negligence." The cross-complaint alleged that Roni L. (Roni), the child's mother, had falsely represented that she was taking birth control

pills and that in reliance upon such representation Stephen engaged in sexual intercourse with Roni which eventually resulted in the birth of a baby girl unwanted by Stephen. Stephen further alleged that as a "proximate result" of Roni's conduct he had become obligated to support the child financially, and had suffered "mental agony and distress all to his general damage in the amount of $100,000.00." Stephen also sought punitive damages of $100,000 against Roni for having acted "with oppression, fraud, and malice" towards him.

Roni moved for a judgment on the pleadings claiming that (1) to allow Stephen to recover damages would be against public policy, and (2) Stephen had failed to establish damages. The trial court treated Roni's motion as a general demurrer to the cross-complaint and ordered the action dismissed. Stephen appeals.

## ISSUE ON APPEAL:

■ The sole issue in this case is: As between two consenting sexual partners, may one partner hold the other liable in tort for the birth of a child conceived in an act of intercourse where the one partner relied on the other partner's false representation that contraceptive measures had been taken? We conclude that in this case Roni's conduct complained of by Stephen did not give rise to liability.

## DISCUSSION:

The critical question before us is whether Roni's conduct towards Stephen is actionable at all. Stephen claims it is actionable as a tort. Neither statutory nor judicial recognition of such a claim in California or elsewhere in the United States has been brought to the attention of this court. Though the presentation of the matter as a legal issue is somewhat novel, the social conditions underlying it have existed since the advent of mankind.

Broadly speaking, the word "tort," means a civil wrong, other than a breach of contract, for which the law will provide a remedy in the form of an action for damages. It does not lie within the power of any judicial system, however, to remedy all human wrongs. There are many wrongs which in themselves are flagrant. For instance, such wrongs as betrayal, brutal words, and heartless disregard of the feelings of others

are beyond any effective legal remedy and any practical administration of law. (Prosser, Torts (3d ed. 1964) ch. 1, §§ 1 and 4. pp. 1-2, 18, 21.) To attempt to correct such wrongs or give relief from their effects "may do more social damage than if the law leaves them alone." (Ploscowe, *An Action For "Wrongful Life"* (1963) 38 N.Y.U. L.Rev. 1078, 1080.) The present case falls within that category.

We are in effect asked to attach tortious liability to the natural results of consensual sexual intercourse. Stephen's claim is one of an alleged wrong to him personally and alone. Procedurally and technically it is separate and apart from any issue of either parent's obligation to raise and support the child. Although actually requiring the mother to pay Stephen monetary damages may have the effect of reducing her financial ability to support the child, we need not get into this area of discussion or resolve such problems as may exist in that area. In the posture of the case as presented to us, the state has minimal if any interest in this otherwise entirely private matter. Claims such as those presented by plaintiff Stephen in this case arise from conduct so intensely private that the courts should not be asked to nor attempt to resolve such claims. Consequently, we need not and do not reach the question of whether Stephen has established or pleaded tort liability on the part of Roni under recognized principles of tort law. In summary, although Roni may have lied and betrayed the personal confidence reposed in her by Stephen, the circumstances and the highly intimate nature of the relationship wherein the false representations may have occurred, are such that a court should not define any standard of conduct therefor.

We are aware of decisions in this and other jurisdictions which have, under certain circumstances, attached tortious liability to the birth of a child. Even though some of the cases involve the recognition of changed social and moral attitudes, all of them are distinguishable from the present case. First, in none of those cases did the plaintiffs seek so radical a change in the socially accepted ideas and views of sexual conduct, family relationship, parental obligations, and legal and moral responsibility for one's own conduct as does Stephen. Secondly, in those cases the facts and the relationship of the parties-litigants are different. For example, *Custodio v. Bauer* (1967) 251 Cal.App.2d 303 [59 Cal.Rptr. 463, 27 A.L.R.3d 884] recognizes the liability of the third party physician for failure to properly sterilize the mother of a child born after the negligent operation. Thus, there the basis for recovery was the malprac-

tice of the third party physician. Similarly, in *Stills* v. *Gratton* (1976) 55 Cal.App.3d 698 [127 Cal.Rptr. 652], the negligent performance of an abortion, which led to the birth of a child, was recognized as malpractice for which the unmarried woman had a cause of action against the doctor. On the other hand, some jurisdictions have denied recovery when the physician's malpractice results in the birth of a healthy child on the basis that the intangible benefits of having a child offset the expenses of raising a child. (See *Rieck* v. *Medical Protective Co. of Fort Wayne, Ind.* (1974) 64 Wis.2d 514 [219 N.W.2d 242].) Still other jurisdictions have denied recognition of a cause of action by an illegitimate child for his own "wrongful life." Thus, in *Zepeda* v. *Zepeda* (1963) 41 Ill.App.2d 240 [190 N.E.2d 849], an illegitimate child sued its father for "wrongful life." In *Zepeda*, the defendant had induced the child's mother to have sexual intercourse with him by promising to marry her. However, unknown to the mother, the defendant was already married. The birth of the plaintiff as an illegitimate child resulted. The child sued to recover damages against its father, claiming that his illegitimate birth as the result of the fraud perpetrated by his father upon his mother deprived him of his right to have a normal home and stigmatized him as a bastard. The court concluded that while a tort had been committed by the father against the plaintiff child, it would affirm the dismissal of the complaint because to do otherwise would have wide-ranging social consequences. A similar result was reached in *Williams* v. *State* (1966) 18 N.Y.2d 481 [276 N.Y.S.2d 885, 223 N.E.2d 343]. There the illegitimate child, born to a mentally deficient mother as a consequence of a rape by another patient during the mother's confinement as a patient at the state hospital, sued the state hospital for its negligence in failing to safeguard her mother. The plaintiff claimed that as a result, she was forced to bear the stigma of illegitimacy and to suffer the deprivations of normal childhood and familial property rights. Though acknowledging that the allegations of the complaint, if true, indicated grievous neglect by the state, the court denied recovery because of "policy and social reasons."[1]

The claim of Stephen is phrased in the language of the tort of misrepresentation. Despite its legalism, it is nothing more than asking the court to supervise the promises made between two consenting adults as

---

[1]The *Zepeda* and *Williams* cases have been discussed in a number of law reviews. See e.g. Tomlinson, *Torts—Wrongful Birth and Wrongful Life* (1979) 44 Mo. L.Rev. 167; Wolff, *Wrongful Life: A Modern Claim Which Conforms to the Traditional Tort Framework* (1978) 20 Wm. & Mary L.Rev. 125; Comment (1963-1964) 49 Iowa L.Rev. 1005; Ploscowe, *An Action For "Wrongful Life"* (1963) 38 N.Y.U. L.Rev. 1078.)

to the circumstances of their private sexual conduct. To do so would encourage unwarranted governmental intrusion into matters affecting the individual's right to privacy. In *Stanley* v. *Georgia* (1969) 394 U.S. 557, 564 [22 L.Ed.2d 542, 549, 89 S.Ct. 1243], the high court recognized the right to privacy as the most comprehensive of rights and the right most valued in our civilization. Courts have long recognized a right of privacy in matters relating to marriage, family and sex. (See e.g. *People* v. *Belous* (1969) 71 Cal.2d 954, 963 [80 Cal.Rptr. 354, 458 P.2d 194], regarding the right of a woman to bear children; *Griswold* v. *Connecticut* (1965) 381 U.S. 479, 485-486 [14 L.Ed.2d 510, 515-516, 85 S.Ct. 1678] concerning state law forbidding use of contraceptives by married couples; *Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 453-455 [31 L.Ed.2d 349, 362-363, 92 S.Ct. 1029] regarding state law prohibiting distribution of contraceptives to unmarried persons.)

We reject Stephen's contention that tortious liability should be imposed against Roni, and conclude that as a matter of public policy the practice of birth control, if any, engaged in by two partners in a consensual sexual relationship is best left to the individuals involved, free from any governmental interference. As to Stephen's claim that he was tricked into fathering a child he did not want, no good reason appears why he himself could not have taken any precautionary measures. Even if Roni had regularly been taking birth control pills, that method, though considered to be the most reliable means of birth control, is not 100 percent effective. Although slight, there is some statistical probability of conception. Of those women who for a year use birth control pills containing both estrogen and progestin, less than 1 woman out of 100 will become pregnant. However, as to those women using birth control pills containing only progestin, 2 to 3 women out of 100 will become pregnant. (U.S. Dept. of Health, Ed., & Welfare, Pub. Health Service, and Food and Drug Admin., *Contraception*, HEW Publication No. FDA 78-3069.)

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 9, 1980. Mosk, J., and Newman, J., were of the opinion that the petition should be granted.