[L.A. No. 32020. Dec. 31, 1986.]

*OREN ROYAL OAKS VENTURE, Plaintiff and Appellant, v. GREENBERG, BERNHARD, WEISS & KARMA, INC., et al., Defendants and Respondents.

---

*This case was previously entitled "Oren Royal Oaks Venture v. Ronald T. Stanman et al."

1158

COUNSEL

Greenberg, Glusker, Fields, Claman & Machtinger and Garrett L. Hanken for Plaintiff and Appellant.

Gilbert, Kelly, Crowley & Jennett, Patrick A. Mesisca, Jr., and James M. Fischer as Amici Curiae on behalf of Plaintiff and Appellant.

MacDonald, Halsted & Laybourne, Brian G. Gough and Gary L. Urwin for Defendants and Respondents.

Jones & Wilson, William John Rea, Jr., Haight, Dickson, Brown & Bonesteel, Lori R. Behar and Robert L. Kaufman as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**GRODIN, J.**—In this case we must determine what role the statutory "privilege" for statements made in the course of a judicial proceeding (Civ. Code, § 47, subd. 2 [hereafter § 47(2)])[1] plays in an abuse of process action. In particular, we must decide whether section 47(2) precludes a court from making evidentiary use of statements made during negotiation sessions in determining whether a defendant in an abuse of process action acted for an improper "ulterior" purpose.

As we shall explain, we conclude that section 47(2) does not bar the evidentiary use of such statements to establish the motive with which a defendant in an abuse of process action acted. As we further explain, however, we additionally conclude that even though the alleged statements in question here could properly be considered for their evidentiary value on the issue of motive, the facts alleged in the complaint and set forth in the declarations on the summary judgment motion are nonetheless insufficient to support an abuse of process action. Accordingly, we affirm the trial court's summary judgment in favor of defendants.

I

In the late 1970's, plaintiff Oren Royal Oaks Venture (Oren), a limited partnership, proposed to construct a 50-lot residential development in Encino

---

[1] Unless otherwise noted, all statutory references are to the Civil Code.

on property adjoining the home of defendant Ronald Stanman. Stanman objected to the development because of its potential effect on the peace and tranquility of his neighborhood and opposed the tract map at planning commission hearings. Ultimately, the City of Los Angeles conditionally approved a tentative tract map of the development in December 1978.

In January 1979, Stanman filed an administrative mandamus action under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.), challenging the sufficiency of the environmental impact report (EIR) relied on by the city in approving Oren's proposed subdivision, and requesting the court to vacate the city's approval. In connection with the action, Stanman sought a stay of the recordation of the final tract map. In September 1979, the trial court granted a temporary stay and set a hearing on the issue for November 1979. At the conclusion of the November hearing, the trial court granted summary judgment in favor of the city and dissolved the stay.

Several months later, Stanman retained a second law firm, Greenberg, Bernhard, Weiss & Karma, Inc. (hereafter Greenberg), to prosecute an appeal of the adverse judgment in the CEQA action. After some negotiation with Oren, Greenberg filed a notice of appeal on Stanman's behalf in July 1980. ■ Shortly thereafter, Greenberg filed a related petition for an extraordinary writ of mandate in the Court of Appeal in which the appeal was pending, seeking a stay order to prohibit the developer from undertaking further physical alterations on the property pending the resolution of the appeal. In fact, supersedeas in the appeal would have been the proper procedure to obtain a stay. Nonetheless, in October 1980, the Court of Appeal granted a temporary stay as requested; though later modified in some respects, the stay remained in effect throughout the pendency of the appeal.[2]

In May 1981, while the CEQA appeal was still pending in the Court of Appeal, Oren filed the present action against Stanman and the attorneys who had represented him in the CEQA litigation, seeking damages for abuse of process and conspiracy to abuse process. The complaint alleged, inter

---

[2]Shortly after the stay was granted by the appellate court, the Court of Appeal—on Oren's motion—modified its order to permit Oren to undertake alterations necessary to prevent slippage or erosion of property that had already been graded; the court declined, however, to dissolve the entire stay. Thereafter, in December 1980, the Court of Appeal summarily denied Stanman's extraordinary writ petition, but retained its modified stay in effect pending the resolution of the appeal in the CEQA action. Oren then renewed its request to have the stay vacated, suggesting that if the stay was not dissolved Stanman should be required to post a $2,875,000 bond to cover the losses threatened by the stay. In January 1981, the Court of Appeal conditioned the continuation of the stay on the posting of a $25,000 bond; Stanman posted a bond in that sum and the stay remained in effect.

alia, that "[d]efendants' actual and sole purpose in bringing and pursuing the Mandate Proceedings was and is to obtain a collateral advantage over plaintiff by coercing plaintiff to pay money to Stanman in order to get him to dismiss the Mandate Proceedings." The complaint asserted that defendants had offered to dismiss the CEQA action in return for Oren's payment of money or conveyance of a designated lot to Stanman and suggested that this offer showed that the CEQA proceedings were not pursued to protect environmental and planning interests but rather to obtain the payment of money. Averring that "[t]he use of the Mandate Proceedings to obtain payment of money is not a proper purpose of the Mandate Proceedings," the complaint alleged that defendants should be held liable for abuse of process for using the CEQA mandate proceeding for such a purpose. The complaint, however, did not purport to state a cause of action for malicious prosecution, and did not allege that Stanman had brought the CEQA action without "probable cause" to believe that the action was meritorious. The omission of a cause of action for malicious prosecution may have been based on the fact that, at the time the complaint was filed, the CEQA action had not yet been terminated, and thus Oren could not allege the "favorable termination" that is one required element of that cause of action. (See 4 Witkin, Summary of Cal. Law (8th ed. 1973) § 246, p. 2525 and cases cited.)

In July 1981, two months after the abuse of process action had been filed, the Court of Appeal ruled in Oren's favor in the CEQA appeal, affirming the trial court judgment and vacating the stay that it had previously issued. Despite the "favorable termination" of the CEQA action, however, Oren did not seek to amend its complaint in this proceeding to allege a cause of action for malicious prosecution. Instead, it continued to pursue the action solely on abuse-of-process and conspiracy-to-abuse-process theories.

After the parties had engaged in some discovery with respect to the abuse of process action, defendant Greenberg—the law firm that had represented Stanman in connection with the CEQA appeal—filed a motion for summary judgment. Greenberg contended that, as a matter of law, there was no basis on which to establish liability against it for abuse of process or conspiracy to abuse process because of "[(1)] the privilege available under California Civil Code Section 47(2) and/or [(2)] the fact that the acts constituting the alleged abuse are insufficient to support the cause of action." Emphasizing that Oren's claims against it relied heavily on statements that its attorneys had made during settlement negotiations with regard to the appeal, Greenberg maintained that by virtue of section 47(2) such statements could not properly be considered in determining its potential liability for abuse of process. In support of its contention, Greenberg cited the then-recent decision in *Asia Investment Co.* v. *Borowski* (1982) 133 Cal.App.3d 832 [184

Cal.Rptr. 317, 30 A.L.R.4th 561], which had rejected an abuse of process claim on similar facts.

In its opposition to the summary judgment motion, Oren maintained that its abuse of process action was not based on the statements made in the settlement negotiations alone, but on the entire course of conduct of Stanman and his attorneys which demonstrated that the CEQA action had not been brought to protect environmental values but to obtain a monetary settlement. Relying on language from this court's decision in *Spellens* v. *Spellens* (1957) 49 Cal.2d 210, 232-233 [317 P.2d 613],[3] Oren contended that the contents of settlement negotiations could properly be considered in determining whether a party or his attorney had acted with a wrongful "ulterior purpose" that is an element of the abuse of process tort, and it suggested that the *Asia Investment* decision, *supra*, 133 Cal.App.3d 832, was incorrect insofar as it suggested that the provisions of section 47(2) precluded any consideration of such statements in an abuse of process action.

At the initial hearing on the summary judgment motion, the trial court noted its uncertainty as to the compatibility of the *Asia Investment* and *Spellens* decisions. The court ultimately denied Greenberg's motion for summary judgment, suggesting that Greenberg might want to challenge the ruling in a writ proceeding to obtain an appellate court resolution of the issue. Thereafter, Greenberg did petition for such a writ, and the Court of Appeal—without issuing an alternative writ—granted a peremptory writ of mandate, directing the trial court to grant summary judgment in Greenberg's favor. As the controlling authority, the Court of Appeal cited *Asia Investment*. Oren filed a petition for hearing in this court seeking review of the Court of Appeal decision, but the peremptory writ issued from the Court of Appeal before this court had an opportunity to act on the petition. (Cf. *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180-181 [203 Cal.Rptr. 626, 681 P.2d 893].) We denied Oren's petition without prejudice to its right to appeal from summary judgment.

The case returned to the trial court, and that court, following the directions of the peremptory writ, granted summary judgment in favor of Greenberg. Oren appealed from the judgment.

---

[3]In *Spellens,* the court quoted at length Prosser's discussion of the abuse of process tort: "'The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of process not proper in the regular conduct of the proceeding. . . . The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and *it is what is done in the course of negotiation,* rather than the issuance of any formal use of the process itself, which constitutes the tort.' (. . . Prosser on Torts, (2d ed.) p. 667.)" (49 Cal.2d at pp. 232-233 [italics added and deleted].) Oren relied on the italicized language.

On appeal, the Court of Appeal reconsidered the matter and concluded that it had erred in directing summary judgment in Greenberg's favor. After reviewing the application of section 47(2) in past decisions, the court concluded that "[w]hen the publication itself is alleged to be the tortious conduct . . ., the privilege creates a 'transactional immunity.' Where, however, the alleged tortious conduct is something other than the publication itself, then the publication may be used as evidence bearing on the tortious nature of that conduct. In other words, Civil Code section 47(2) does not provide an immunity from 'use' of the publication." Because it concluded that in this case the alleged tortious conduct was the institution of the CEQA action for an improper purpose, and not the negotiation statements, the Court of Appeal concluded that section 47(2) would not bar the evidentiary consideration of those statements in determining the objective for which the CEQA action was pursued. It suggested that to the extent the *Asia Investment* decision had reached a contrary conclusion, that decision should not be followed.

The Court of Appeal recognized that its resolution of the section 47(2) issue still left a remaining question, that is, whether the filing and pursuit of the CEQA action for an improper purpose—as alleged by the complaint in this case—would in itself suffice to constitute a tortious abuse of process. The Court of Appeal concluded that it would, and therefore found that Greenberg was not entitled to summary judgment.

We granted a hearing primarily to resolve the apparent conflict between the Court of Appeal decision in this case and the Court of Appeal decision in *Asia Investment*.

## II

The privilege recognized by section 47(2) for a "publication or broadcast" made in "any . . . judicial proceeding"[4] derives from common law principles establishing a defense to the tort of defamation. (See generally Veeder, *Absolute Immunity in Defamation: Judicial Proceedings* (1909) 9 Colum.L.Rev. 463.) Its placement in the Civil Code immediately following the statutory provisions defining the elements of the twin defamation torts of libel and slander (see §§ 44, 45, 46) makes clear that, at least historically, the section was primarily designed to limit an individual's potential liability for defamation.

---

[4]Section 47(2) provides in relevant part: "A privileged publication or broadcast is one made— . . . 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law . . . ."

Thirty years ago, however, in the seminal decision of *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], our court—in a decision authored by Justice Traynor—concluded that the privilege of section 47(2) could not properly be narrowly interpreted to apply only to defamation actions but also should be applied to at least some other tort actions as well. In *Albertson*, the plaintiff had brought a tort action for "disparagement of title" based on the defendant's filing of a notice of lis pendens which the plaintiff claimed was unfounded. Concluding that the section 47(2) privilege applied to a cause of action for disparagement of title as well as for defamation (46 Cal.2d at pp. 378-379), and that the filing of a notice of lis pendens was a publication sufficiently related to a judicial proceeding to enjoy the absolute privilege accorded by section 47(2) (*id.*, at pp. 379-382), the *Albertson* court held that such a filing could not subject the defendant to liability for disparagement of title.

At the same time, however, the *Albertson* court also held that the absolute privilege of section 47(2) could not be applied to shield the defendant from liability that might legitimately be imposed for the tort of malicious prosecution. The court explained: "It may be noted at the outset that the fact that a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case. The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied. [Citations.]" (46 Cal.2d at p. 382.) Finding that the complaint in that case did allege sufficient facts to support the elements of a malicious prosecution action, the *Albertson* court concluded that plaintiff's cause of action could go forward on that theory.

In the three decades since *Albertson,* numerous California cases have followed that decision's application of section 47(2) outside of the defamation arena and have held the statutory privilege applicable to a wide variety of tort theories on which plaintiffs have attempted to rely in order to recover monetary damages for conduct of a defendant that would be privileged for defamation purposes.[5] In *Thornton* v. *Rhoden* (1966) 245

[5]See, for example, *Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 640-641 [99 Cal.Rptr. 393] (intentional infliction of emotional distress); *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 579 [131 Cal.Rptr. 592] (same); *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484 [104 Cal.Rptr. 650] (same, fraud and negligence); *Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804 [42 Cal.Rptr. 314] (inducing breach of contract); *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 737-738 [151 Cal.Rptr. 206] (intentional interference with prospective economic advantage); *Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386 [182 Cal.Rptr. 438] (professional negligence). See, in addition, *Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364-365 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417] (statutory invasion of privacy claim).

Cal.App.2d 80, 99 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152], Justice Kaus, writing for the Court of Appeal, captured the heart of the reasoning which underlies an expansive application of section 47(2): "The salutary purpose of the privilege should not be frustrated by putting a new label on the complaint. If it is desirable to create an absolute privilege in defamation, not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with libel or slander actions while acting for his client, we should not remove one concern and saddle him with another for doing precisely the same thing."

The *Thornton* decision itself invoked this reasoning to hold that the section 47(2) privilege applies to a tort action for abuse of process. Since *Thornton*, a considerable number of cases have followed that decision and have found abuse of process actions untenable on the basis of the statutory privilege. (See, e.g., *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916 [134 Cal.Rptr. 145]; *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289 [113 Cal.Rptr. 113]; *Umansky* v. *Urquhart* (1978) 84 Cal.App.3d 368 [148 Cal.Rptr. 547]; *Drasin* v. *Jacoby & Meyers* (1984) 150 Cal.App.3d 481 [197 Cal.Rptr. 768].) *Asia Investment Co.* v. *Borowski, supra,* 133 Cal.App.3d 832, is one of the more recent cases in this line of decisions.

In *Asia Investment,* the plaintiff real estate developer brought an initial suit against defendant Borowski to resolve a dispute over ownership and possession of a house. While that action—referred to as the "house case" by the *Asia Investment* court—was still pending, Borowski filed a separate action alleging that the developer and the relevant governmental entity had failed to comply with CEQA requirements in connection with the entire development containing the disputed house. During a subsequent discussion between the parties' attorneys, Borowski's counsel allegedly told the developer's counsel "that [the developer] really ought to settle the house case because if the Borowskis won the CEQA action it would blow [the developer's] whole subdivision."

After the Borowski's CEQA action was dismissed on the basis of laches, the developer filed another action—the action at issue in *Asia Investment*—against Borowski, seeking damages on theories of malicious prosecution and intentional interference with prospective economic advantage based on Borowski's conduct in bringing the CEQA case. The trial court granted summary judgment in favor of Borowski on both causes of action and then denied the developer's motion seeking to file an amended complaint on an abuse of process theory. The developer appealed.

On appeal, the *Asia Investment* court affirmed the trial court judgment in its entirety. After explaining why the alleged facts failed to satisfy the

required elements of malicious prosecution or of intentional interference with prospective economic advantage (see 133 Cal.App.3d at pp. 837-841), the Court of Appeal turned to the proposed abuse of process claim. Viewing the crux of the abuse of process action as the statement by Borowski's lawyer indicating that the developer ought to settle the house case because the CEQA action could "blow [the developer's] whole subdivision," the court concluded that even if the statement "was inferably a threat to coerce [the developer] into settling the house case by the use of the CEQA action," an abuse of process action would not lie because the lawyer's comment was "a privileged statement" under section 47(2). (*Id.*, at p. 842.)

In explaining its conclusion, the *Asia Investment* court reasoned in part: "The threatening inference aside, the statement was essentially a settlement proposal. As such it was made to achieve the objects of the house suit, in which both attorneys were counsel. Settlements of disputes have long been favored by the courts and attorneys should be accorded wide latitude in making statements during settlement negotiations. [Citations.] Protecting attorneys during the course of the representation of their clients is necessary to promote the litigants securing free access to the courts. [Citation.] Even considering the settlement proposal was made in a manner which might be considered a veiled 'threat' we recognize 'this type of language is part of the adversary system, and, as such, is to be anticipated in the course of "heated battle" between adverse parties to proceedings considered to be within the context of "judicial proceedings."' [Citation.] As a statement made between counsel during a judicial proceeding regarding settlement, the alleged 'threat' was within the privilege of Civil Code section 47, subdivision 2. Accordingly, the plaintiff could not state a cause of action for abuse of process." (*Id.*, at p. 843.)

Defendant Greenberg contends that the present matter is on all fours with *Asia Investment,* and it argues that the Court of Appeal in the present case erred in failing to find that the abuse of process action against it was barred under section 47(2).

■ Oren challenges Greenberg's position on two distinct grounds. First, and more broadly, Oren questions the soundness of the entire line of cases beginning with *Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, applying the section 47(2) privilege to abuse of process actions. Oren maintains that while section 47(2) has properly been applied beyond the defamation context to torts like disparagement of title or intentional infliction of emotional distress, it should not be applied in the abuse of process context. It reasons that just as *Albertson, supra,* 46 Cal.2d 375, recognized that section 47(2) could not properly be applied to a malicious prosecution action, the statutory

privilege similarly should not apply to bar an otherwise proper abuse of process claim. Oren emphasizes that unlike defamation and other torts that generally apply to conduct outside the judicial process, both malicious prosecution and abuse of process are torts that are peculiarly concerned with misconduct within the judicial process. Because of the narrow focus of these torts on judicially related misconduct, Oren suggests that the elements of both malicious prosecution and abuse of process are themselves structured to take into account the concerns underlying section 47(2), and, when the elements of either of the torts are present, liability should appropriately be imposed. Indeed, Oren maintains that if the absolute privilege of section 47(2) were applied in the abuse of process context in the same manner as it applies to other torts, the privilege would largely eliminate the entire abuse of process tort.[6] Although it acknowledges the significant number of California cases that have applied section 47(2) to bar abuse of process claims, Oren suggests that in virtually every case the courts could have reached the same result through a proper application of the elements of the abuse of process tort; it points out that in *Thornton* and a number of other cases in this line, the appellate court, after discussing the section 47(2) privilege, in fact went on to conclude that the allegations at issue did not state a cause of action for abuse of process in any event. (See, e.g., *Thornton* v. *Rhoden, supra,* 245 Cal.App.2d at p. 100; *Drasin* v. *Jacoby & Meyers, supra,* 150 Cal.App.3d at p. 485.) On the basis of this initial contention, Oren urges us to reject the premise of *Asia Investment, supra,* 133 Cal.App.3d 832, that section 47(2) applies at all in the abuse of process context.

Alternatively, and much more narrowly, Oren argues that *Asia Investment* and the entire line of abuse of process cases beginning with *Thornton, supra,* 245 Cal.App.2d 80, are distinguishable from the present case. Oren maintains that unlike those cases in which the plaintiff was seeking to impose liability on the defendant directly on the basis of privileged conduct, in this case it is not relying on the attorneys' statements during negotiations as the basis of liability, but rather is simply attempting to make evidentiary use of those statements to prove one element of a cause of action which arises from defendants' conduct in instituting the CEQA action. Oren contends that section 47(2) does not preclude the evidentiary use of such statements. Because we find this second contention meritorious, we need not and do not reach Oren's broader claim that section 47(2) is entirely inapplicable in the abuse of process context.

---

[6] In this regard, Oren suggests—with some persuasive force—that a number of past cases which have upheld the propriety of abuse of process actions on the basis of unauthorized conduct in a judicial proceeding (e.g., *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94 [101 Cal.Rptr. 745, 496 P.2d 817]; *Spellens* v. *Spellens, supra,* 49 Cal.2d 210) could not have been decided as they were if the absolute privilege of section 47(2) were applicable in the abuse of process context.

As the Court of Appeal explained in *Block* v. *Sacramento Clinical Labs, Inc., supra,* 131 Cal.App.3d 386, 389: "The privileges of Civil Code section 47, *unlike evidentiary privileges which function by the exclusion of evidence* (see Evid. Code, § 900 et seq.), operate as limitations upon liability." (Italics added.) Indeed, on brief reflection, it is quite clear that section 47(2) has never been thought to bar the *evidentiary* use of every "statement or publication" made in the course of a judicial proceeding: answers to interrogatories or to questions at depositions are, for example, routinely admitted into evidence and relied on in determining liability even though they are clearly "statements made in the course of a judicial proceeding." Thus, while section 47(2) bars certain tort causes of action which are predicated on a judicial statement or publication itself, the section does not create an evidentiary privilege for such statements. Accordingly, when allegations of misconduct properly put an individual's intent at issue in a civil action, statements made during the course of a judicial proceeding may be used for evidentiary purposes in determining whether the individual acted with the requisite intent. (See, e.g., *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 887-889 [221 Cal.Rptr. 509, 710 P.2d 309]; *Spellens* v. *Spellens, supra,* 49 Cal.2d 210, 232-233.)

In the present case, Oren contends that defendants' tortious conduct was the filing and continued pursuit of the CEQA action for the "ulterior" purpose of extorting a monetary settlement. If such conduct could properly support a cause of action for abuse of process, section 47(2) would not preclude Oren from making evidentiary use of defendants' statements during negotiations to prove the intent with which defendants' conduct was undertaken. Thus, Oren's proposed evidentiary use of such statements could not in itself justify the summary judgment in defendants' behalf.

### III

 Even if defendants' statements during the negotiation process are admissible as evidence of their motives, the question remains whether the facts alleged in Oren's complaint and set out in its declarations are sufficient to support a cause of action for abuse of process. As we shall see, past cases make clear that they are not.

In *Templeton Feed & Grain* v. *Ralston Purina Co.* (1968) 69 Cal.2d 461, 466 [72 Cal.Rptr. 344, 446 P.2d 152], we set forth the two fundamental elements of the tort of abuse of process: "'first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding.'" In the present case, Oren maintains that the second element—"a wilful act . . . not proper in the regular conduct of the

proceeding"—is satisfied by its allegations that defendants instituted and continued to prosecute the CEQA action for the purpose of coercing a monetary settlement rather than to further environmental concerns.

█ The relevant California authorities establish, however, that while a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose— is not a proper basis for an abuse of process action. (See, e.g., *Friedman* v. *Stadum* (1985) 171 Cal.App.3d 775, 779-780 [217 Cal.Rptr. 585]; *Drasin* v. *Jacoby & Meyers, supra,* 150 Cal.App.3d 481, 485; *Seidner* v. *1551 Greenfield Owners Assn.* (1980) 108 Cal.App.3d 895, 904-905 [166 Cal.Rptr. 803]; *Christensen* v. *Younger* (1975) 47 Cal.App.3d 613, 617 [120 Cal.Rptr. 923].) The overwhelming majority of out-of-state precedents have reached the same conclusion. (See, e.g., *Bird* v. *Rothman* (1981) 128 Ariz. 599 [627 P.2d 1097, 1100]; *Brody* v. *Ruby* (Iowa 1978) 267 N.W.2d 902, 905; *Bickel* v. *Mackie* (N.D.Iowa 1978) 447 F.Supp. 1376, 1382-1383; *Baker Driveaway Co., Inc.* v. *Bankhead Enterprises* (E.D.Mich. 1979) 478 F.Supp. 857, 860; *Farmers Gin Company* v. *Ward* (1964) 73 N.M. 405 [389 P.2d 9, 11-12]; *Drago* v. *Buonagurio* (Sup.Ct. 1977) 89 Misc.2d 171 [391 N.Y.S.2d 61, 62], affd. (1978) 46 N.Y.2d 778 [413 N.Y.S.2d 910, 386 N.E.2d 821]; *Petrou* v. *Hale* (1979) 43 N.C.App. 655 [260 S.E.2d 130, 133-134]; *Martin* v. *Trevino* (Tex.Civ.App. 1978) 578 S.W.2d 763, 769; contra, *Bull* v. *McCuskey* (1980) 96 Nev. 706 [615 P.2d 957, 960].)

The rationale underlying these decisions is not difficult to ascertain. The elements of the common law malicious-prosecution cause of action have evolved over time as an appropriate accommodation between the freedom of an individual to seek redress in the courts and the interest of a potential defendant in being free from unjustified litigation. In order to avoid an improper "chilling" of the right to seek redress in court, the common law provides that to prevail in a tort action for malicious prosecution a party must demonstrate "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his . . . favor . . .; (2) was brought without probable cause . . .; and (3) was initiated with malice . . . ." (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878] [citations omitted].) If, as Oren maintains, the filing of an action for an improper "ulterior" purpose were itself sufficient to give rise to an abuse of process action, the "lack-of-probable-cause" element of the malicious prosecution tort would be completely negated; even if an individual could demonstrate that he had reasonable cause to believe that his initial lawsuit had merit when he filed the action, he would still face potential liability under an

abuse of process theory. Because the lack-of-probable-cause requirement in the malicious prosecution tort plays a crucial role in protecting the right to seek judicial relief (see Rest.2d Torts, § 675, coms. *c-j*), we agree with the prior decisions which have concluded that this element may not be circumvented through expansion of the abuse of process tort to encompass the alleged improper filing of a lawsuit.

 Accordingly, since the gist of Oren's complaint was simply that defendants improperly instituted the CEQA action in the first place, we conclude that the complaint did not state a cause of action for abuse of process. While Oren might have successfully pursued an action for malicious prosecution if it were able to establish that defendants lacked probable cause to prosecute the CEQA action, it made no effort to do so. Under these circumstances, we conclude that Greenberg was entitled to summary judgment on the abuse of process claim.

## IV

In sum, we conclude that section 47(2) does not prohibit the consideration, for evidentiary purposes, of statements made in the course of settlement negotiations, but also conclude that the allegations of the present complaint are insufficient to state a cause of action for abuse of process.

Accordingly, the judgment of the trial court is affirmed.

Broussard, J., Lucas, J., and Panelli, J., concurred.

**MOSK, J.**—I concur in the judgment, but I would reach the result by relying on the well-reasoned opinion in *Asia Investment Co.* v. *Borowski* (1982) 133 Cal.App.3d 832 [184 Cal.Rptr. 317, 30 A.L.R.4th 561]: the reception into evidence of statements made by the parties or counsel during the course of settlement negotiations is clearly contrary to the provisions and fundamental purpose of the privilege contained in Civil Code section 47, subdivision 2. This court unanimously denied a hearing in that case.

Though arguably merely dictum, the discussion of the majority may serve to inhibit the forthright interchange essential for successful settlement negotiations. In order to avoid a subsequent action for abuse of process, or some similar cause of action, the parties and particularly the lawyers hereafter may be unduly guarded, rather than free and open, in discussions designed to prevent or terminate litigation. Such a result ill-serves the strong public interest in the settlement of controversies.

Those who seek to strictly enforce the California Environmental Quality Act have a variety of motivations. Some sue for aesthetic considerations, some out of concern for the effect on flora and fauna, some to maintain or achieve a healthful environment, still others merely to protect or enhance the value of their property. It is the latter group of persons who are most likely to inject monetary factors into settlement negotiations. Proposals of that type are not improper, and for the reasons given above should not be admissible into evidence in subsequent litigation.

Bird, C. J., and Reynoso, J., concurred.

Appellant's petition for a rehearing was denied February 11, 1987.