[No. B032200. Second Dist., Div. Seven. May 25, 1989.]

PETER PAUL NAGY, Plaintiff and Appellant, v.
SABINA ELIZABETH NAGY, Defendant and Respondent.

**COUNSEL**

Jaffe & Jaffe and F. Filmore Jaffe for Plaintiff and Appellant.

John M. Pitkin for Defendant and Respondent.

**OPINION**

**WOODS (Fred), J.**—Plaintiff (hereafter appellant) appeals from an order of dismissal. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and respondent were formerly husband and wife. On September 28, 1987, appellant filed his first amended complaint for intentional infliction of emotional distress and fraud.

Among the allegations of the intentional infliction of emotional distress cause of action were the following: "On the 21st day of December, 1973,

[appellant and respondent] entered into a ceremony of marriage and every [*sic*] since that day until April 6, 1987, were husband and wife.

"From and after the date of the marriage, to wit, December 21, 1973, plaintiff and defendant actively sought to have children born of this marriage but without success.

"Prior to January 4, 1983, defendant SABINA ELIZABETH NAGY orally represented to the plaintiff that she was pregnant with his child and, on January 4, 1983, CHRISTOPHER ADAM NAGY was born.

"At all times after January 4, 1983, relying upon the representation of defendant SABINA ELIZABETH NAGY that he was the father of Christopher Adam Nagy, plaintiff embraced Christopher Adam Nagy as his son, developing a very close and intimate relationship with Christopher and did and performed all acts that a father would towards a son.

"During the course of the litigation between the parties in the dissolution proceedings and at a deposition of one Julius Nagy, a witness for the plaintiff herein, taken on August 7, 1986, defendant SABINA ELIZABETH NAGY disclosed to the plaintiff, for the first time, that he was not the father of Christopher Adam Nagy, born January 4, 1983.

"Pursuant to a stipulation between the parties and counsel in said dissolution proceeding, an HLA Tissue Test was taken to determine the paternity of Christopher Adam Nagy. The results of the HLA tissue typing demonstrated that since PETER NAGY (plaintiff) does not have the blood grouping in the blood of Christopher Adam Nagy, that he could be excluded as the father of Christopher Adam Nagy.

"Defendant SABINA ELIZABETH NAGY'S conduct in having a sexual congress with a person or persons other than plaintiff, causing her pregnancy, and her false and fraudulent representation to plaintiff that he was the father of Christopher, was intentional and malicious and done for the purpose of causing plaintiff to suffer humiliation, mental anguish and emotional and physical distress. Defendant SABINA ELIZABETH NAGY'S conduct in confirming that conduct was done with knowledge that plaintiff's emotional and physical distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to plaintiff."

Among the allegations of the fraud cause of action, which incorporated most of the allegations of the first cause of action, were the following: "At the time defendant made the oral representations [*sic*] . . . defendant knew

that said representation was false and fraudulent and was made to plaintiff so as to cause plaintiff to rely thereon.

"At all times after January 4, 1983, relying upon the representation of defendant SABINA ELIZABETH NAGY that he was the father of Christopher Adam Nagy, plaintiff embraced Christopher Adam Nagy as his son, developing a very close and intimate relationship with Christopher and did and performed all acts that a father would towards a son.

"Plaintiff discovered the falsity of said representation on or about August 7, 1986, when defendant disclosed, for the first time, that plaintiff was not the father of Christopher Adam Nagy. This falsity of said representation was later confirmed by the results of an HLA Tissue Typing Test wherein it was determined that plaintiff was excluded as the father of Christopher Adam Nagy.

"As a result of the false and fraudulent representation made by defendant to plaintiff, plaintiff was damaged in an amount to be determined at time of trial."

Attached to the complaint was the judgment of dissolution, which awarded sole custody of Christopher to respondent. The judgment, which permanently restrained appellant from contacting or communicating with Christopher, provided that: "[appellant] waives any right to sue [respondent] or any third person for reimbursement of any monies paid in the past to [respondent] or third parties for or on behalf of the minor child, Christopher."

On November 13, 1987, respondent's demurrer to the first amended complaint was sustained as to both causes of action. An order of dismissal was filed on November 18, 1987.

Appellant filed a timely notice of appeal.

### DISCUSSION

Appellant contends that he successfully pled causes of action for intentional infliction of emotional distress and fraud and that the trial court erred in sustaining respondent's demurrer to his complaint. We disagree.

It is well settled that a general demurrer admits the truth of all material factual allegations in the complaint and that the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof, does not concern the reviewing court. (*Alcorn* v. *Anbro Engi-*

*neering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) The plaintiff need only plead facts showing that he may be entitled to some relief. (*Ibid.*) If the appellant in the instant case pled facts entitling him to relief, then the trial court erred in sustaining respondent's demurrer.

It is also well established under California law that one can sue a spouse for an intentional tort (*Self* v. *Self* (1962) 58 Cal.2d 683, 691 [26 Cal.Rptr. 97, 376 P.2d 65]) or for a negligent tort. (*Klein* v. *Klein* (1962) 58 Cal.2d 692, 693 [26 Cal.Rptr. 102, 376 P.2d 70].) "It is, of course, fundamental in the law of torts that any person proximately injured by the act of another, whether that act be willful or negligent, should, in the absence of statute or compelling reasons of public policy, be compensated." (*Id.,* at pp. 694-695.) Thus, the issue in this case is whether or not appellant successfully pled causes of action for intentional infliction of emotional distress and fraud and, if so, whether or not there is a compelling statutory or public policy reason not to allow compensation for the alleged injuries.

## I. *Fraud*

The elements of fraud are: (a) misrepresentation; (b) knowledge of falsity (scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778.)

Fraud actions are subject to strict requirements of particularity in pleading. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 216 [197 Cal.Rptr. 783, 673 P.2d 660].) Every element of the cause of action for fraud must be alleged in the proper manner (i.e. factually and specifically), and the policy of liberal construction of the pleadings will not ordinarily be invoked to sustain a pleading defective in any material respect. (*Ibid.*)

Appellant pled that while married to appellant, respondent knowingly misrepresented to him that he was the father of her son, Christopher Adam Nagy, who was born when the parties were married. Appellant further alleged that in reliance upon respondent's misrepresentation, he developed "a very close and intimate relationship with Christopher and did and performed all acts that a father would towards a son." As a result of the misrepresentation, appellant alleged that he suffered emotional distress and that he "was damaged in an amount to be determined at the time of trial."

Fraudulent representations which work no damage cannot give rise to an action at law. (*Abbot* v. *Stevens* (1955) 133 Cal.App.2d 242, 247 [284 P.2d 159].) An allegation of a definite amount of damage is essential

to stating a cause of action. (*Ibid.*) Appellant's complaint was defective in that he did not allege a definite amount of damage.

In addition, for a viable cause of action for fraud, the pleading must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated. (*Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 12 [101 Cal.Rptr. 499, 51 A.L.R.3d 991].)

█ As part of the dissolution judgment, appellant waived his right to sue for "reimbursement of any monies paid . . . for or on behalf of the minor child, Christopher." Furthermore, we are not aware of any law which would permit a person to recover damages for developing an intimate relationship with a child and performing all the acts of a parent. Although damages for emotional distress can be recovered in a fraud cause of action, such damages have been allowed only as an aggravation of other damages. (See *Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 921 [114 Cal.Rptr. 622, 523 P.2d 662]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 433 [58 Cal.Rptr. 13, 426 P.2d 173].) Since we conclude that appellant has not successfully pled other, or indeed any legally recognizable damages, damages for emotional distress alone are not recoverable.

█ A tort is "a civil wrong, other than a breach of contract, for which the law will provide a remedy in the form of an action for damages. It does not lie within the power of any judicial system, however, to remedy all human wrongs. There are many wrongs which in themselves are flagrant. For instance, such wrongs as betrayal, brutal words, and heartless disregard of the feelings of others are beyond any effective legal remedy and any practical administration of law. [Citation.] To attempt to correct such wrongs or give relief from their effects 'may do more social damage than if the law leaves them alone.' [Citation.]" (*Stephen K.* v. *Roni L.* (1980) 105 Cal.App.3d 640, 642-643 [164 Cal.Rptr. 618, 31 A.L.R.4th 383].)

█ At the hearing on respondent's demurrer, appellant declined another opportunity to amend his pleadings, stating that he had nothing more to plead. In addition to appellant's failure to plead damages specifically and factually, we can discern no basis upon which appellant could have amended his complaint to successfully plead a cause of action for fraud.

We conclude that under the facts of this case, an action for fraud would be contrary to public policy. (See *Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369, 379, fn. 9 [193 Cal.Rptr. 422].) In our opinion, allowing a nonbiological parent to recover damages for developing a close relationship with a child misrepresented to be his and performing parental acts is not a

"damage" which should be compensable under the law. Although we do not condone respondent's misrepresentations, they are similar to a "betrayal" for which the law wisely should not provide a remedy.

## II. *Intentional Infliction of Emotional Distress*

■ The elements of the tort of intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) It must also appear that the defendant's conduct was unprivileged. (*Ibid.*)

■ "Civil Code section 47, subdivision 2, provides an absolute privilege for a publication in any judicial proceedings. Neither actual malice or falsehood will defeat the privilege so long as the statement has any reasonable connection with a legal action and is made in furtherance of the litigation. The purpose of the privilege is to secure utmost freedom of access to the courts without fear of retribution." (Fn. omitted.) (*Williams* v. *Coombs* (1986) 179 Cal.App.3d 626, 645 [224 Cal.Rptr. 865] disapproved on another point in *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 883, fn. 9 [254 Cal.Rptr. 336, 765 P.2d 498].) The privilege applies to all participants in the litigation, including parties. (*Smith* v. *Hatch* (1969) 271 Cal.App.2d 39, 46 [76 Cal.Rptr. 350].)

"[T]he statutory privilege accorded to statements made in judicial proceedings . . . applies to virtually all other causes of action, with the exception of an action for malicious prosecution. [Citation.] Thus, the privilege will defeat claims of invasion of privacy [citations] and intentional infliction of emotional distress. [Citation.]" (*Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417].)

■ In the instant case, appellant learned about the falsity of respondent's representation that he was the father of Christopher during a deposition being conducted in the dissolution proceeding. Since appellant had stated that Christopher was his son in his response to respondent's dissolution petition, respondent's statement had a reasonable connection to a legal action—the dissolution proceeding.

Furthermore, appellant alleges that respondent's conduct at the deposition, in confirming her previous conduct, was done to increase his emotional distress. Since appellant's emotional distress was predicated on respondent's

statement and the statement itself was alleged to be tortious, no matter what respondent's motives may have been, her statement was privileged under Civil Code section 47, subdivision 2. (*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1163, 1168 [232 Cal.Rptr. 567, 728 P.2d 1202].) Accordingly, any emotional distress which that statement may have caused appellant is not actionable.

■ Appellant argues that it is not what respondent said at the deposition that is the subject of the emotional distress cause of action, but what she did during the marriage that is actionable. However, appellant overlooks the proximate cause element of this tort. In order to suffer emotional distress from respondent's conduct, it was necessary for appellant to know about it. This cause of action could not accrue until appellant suffered appreciable and actual harm. (See *Davies* v. *Krasna* (1975) 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].) That harm, although not recoverable for policy reasons heretofore discussed, in fact occurred in a privileged litigation setting. The tort was not completed prior to the litigation but during the litigation. Even if it were possible for appellant to craft a complaint for future emotional distress, by successfully divorcing the future emotional distress from the disclosure of the misrepresentation in a privileged litigation setting, we would still be compelled to hold that public policy precludes such future recovery.

Accordingly, we conclude that appellant has not pled the elements of a cause of action for the intentional infliction of emotional distress.

DISPOSITION

The order is affirmed. Respondent to recover costs on appeal.

Lillie, P. J., concurred.

JOHNSON, J.—I concur in the judgment because in the special circumstances of this case public policy concerns about lawsuits over extramarital relations, paternity and other intrafamily conduct outweigh by a slight margin the appellant's right to recover compensation for the injuries he suffered. However, I write separately to register my disagreement with the principal grounds of the majority opinion. First, contrary to the majority, I consider what appellant has alleged as damages in his fraud cause of action are true injuries of a type compensable under the law. Secondly, I further disagree with the majority's conclusion that Civil Code section 47, subdivision 2 bars the plaintiff's action for emotional distress. I also write separately to emphasize that, in a somewhat different factual situation, a lawsuit of

this nature might be maintainable despite the general public policy concerns.

## I

The majority suggests appellant has not stated a valid claim for damages under his fraud cause of action. They argue the alleged fraud did not cause a compensable injury because all it did was lead appellant to develop a close relationship with a child and perform parental acts toward that child. Indeed the majority opinion implies plaintiff actually gained a benefit from his wife's fraud—the "opportunity" to develop a close relationship with a child and to do "fatherly" things with that child. But appellant obviously was not alleging his damages were the "very close and intimate relationship" he had with this child or the fatherly acts he performed. Rather, what appellant alleged as damages is the *loss* of these investments he was fraudulently led to make—the investments of time and money and the investment of emotion. But for his wife's fraudulent representations about the paternity of this child appellant would not have invested the many hours of time nor the thousands of dollars required to "perform all acts that a father would towards a son." Nor would he have invested the deep emotion inherent in "a very close and intimate relationship" with a child one believes to be one's own.

The clear thrust of appellant's allegation is that he has *lost* those investments of time and emotion and will be deprived of the benefits of those investments in the future. The child was not his and is not his and will not be his in the future. Indeed the dissolution judgment permanently restrains appellant from even contacting or communicating with the child in which he allegedly made such an extensive time investment and such a deep emotional investment.

It is hard to imagine a more devestating emotional blow or one more calculated to cause serious emotional distress. That emotional distress is a "resulting damage" of the fraud in this case and is a compensable item of damages. (*Schroeder* v. *Auto Driveway Co.* (1970) 11 Cal.3d 908, 912, 921 [114 Cal.Rptr. 622, 523 P.2d 662] [in case of fraudulent misrepresentation about authorization to transport household goods, plaintiff "is entitled to compensation for pain, suffering, and emotional distress"]; *Sprague* v. *Frank J. Sanders Lincoln Mercury, Inc.* (1981) 120 Cal.App.3d 412, 417 [174 Cal.Rptr. 608] [in fraud case based on false representations about repairability of defective automobile which induced car owner to retain car beyond time when she could rescind purchase, plaintiff allowed to recover damages for emotional injuries since principle "[t]hat general damages for mental pain and suffering are recoverable in a tort action of deceit is estab-

lished by the cases"]; *Allen* v. *Jones* (1980) 104 Cal.App.3d 207, 215 [163 Cal.Rptr. 445], *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 51 [147 Cal.Rptr. 565].)[1] So is the harm suffered through the loss of appellant's investment of time and money in the fathering of a child he was fraudulently led to believe was his own flesh and blood.

The majority concludes by characterizing this as an uncompensable "betrayal." But appellant is not suing for the "betrayal"—his wife's illicit sexual relationship with another man. He is suing her for out-and-out fraud—her continuing three-and-one-half year express misrepresentation that her child was his, too. "Betrayal" may not be a recognized cause of action; fraud is such an action.

Were this the only issue raised by appellant's fraud cause of action I would be calling for reversal of the trial court's decision sustaining the demurrer. However, even though all the elements of a fraud cause of action are present I am persuaded public policy militates against allowing such an action at least where, as here, the fraud occurs during the marriage. (See *Richard P.* v. *Superior Court* (1988) 202 Cal.App.3d 1089, 1094 [249 Cal.Rptr. 246] [disallowing a similar lawsuit against the natural father who failed to disclose to the husband the true parentage of the children the husband was raising]; see also, *Perry* v. *Atkinson* (1987) 195 Cal.App.3d 14, 18-19, 21 [240 Cal.Rptr. 402]; *Stephen K.* v. *Roni L.* (1980) 105 Cal.App.3d 640, 644-645 [164 Cal.Rptr. 618, 31 A.L.R.4th 383]; *Inez M.* v. *Nathan G.* (1982) 114 Misc.2d 282 [451 N.Y.S.2d 607, 611] ["Anglo-American law has long muted its vigilance against fraud to vindicate its paramount concern for the family and the child"].)

I reach this conclusion reluctantly and express no opinion as to the viability of such a cause of action in different circumstances as, for instance,

---

[1] The majority argues emotional distress damages are only permitted in fraud actions "as an aggravation of other damages." This is incorrect. Assuming the only damages incurred in this case were emotional, the cases upon which the majority relies do not support the assertion these damages would not be recoverable in a fraud action. To the contrary, in *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 434, fn. 4 [58 Cal.Rptr. 13, 426 P.2d 173], an insurance bad faith action, the Supreme Court specifically held it was not deciding "whether invasion of the plaintiff's right to be free from emotional disturbance is actionable where there is no injury to person or property rights in addition to the inflicted mental distress."

Moreover, case law has established a plaintiff may recover emotional distress damages in actions based upon intentional torts absent other pecuniary or physical damages. (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 927 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] ["intentional torts will support an award of damages for emotional distress alone, . . . in cases involving 'extreme and outrageous invasions of one's mental and emotional tranquility'"]; *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330, 338 [240 P.2d 282].) Here, it is manifest, at least to me, a wife's fraudulent representations concerning her child's parentage could constitute such an outrageous invasion to permit recovery for emotional distress under a theory of fraud.

where the fraudulent representation about paternity is used to induce a man to marry a woman who is carrying another man's child. (Cf. *Husband* v. *Wife* (Del.Super.Ct. 1970) 262 A.2d 656, 657 [annulment would be allowed where woman falsely claimed child she was carrying at time marriage occurred was husband's even though annulment not allowed where woman falsely claimed she was pregnant in order to induce marriage because "the essence of the marriage contract is wanting when a woman, at the time of its consummation, is bearing in her womb, the fruit of her illicit intercourse with a stranger"].)

I further note that while my research failed to uncover any cases from other jurisdictions discussing tort actions arising from misrepresentation of paternity, several have allowed litigation of this issue in the context of dissolution and divorce proceedings. (See, e.g., *H.P.A.* v. *S.C.A.* (Alaska 1985) 704 P.2d 205, 208 [in dissolution proceeding, husband permitted to argue wife's fraud concerning paternity of child vitiated husband's support obligations]; *Dawkins* v. *Dawkins* (Fla.Dist.Ct.App. 1986) 494 So.2d 282, 283-284 [husband permitted to *set aside* provisions of marital dissolution judgment based upon wife's fraudulent representations concerning parentage of children]; accord *Arndt* v. *Arndt* (1948) 336 Ill.App. 65 [82 N.E.2d 908, 914]; *Winner* v. *Winner* (1920) 171 Wis. 413 [177 N.W. 680, 682] ["the concealment by the woman of the paternity of her child is a fault so grievous that there is no excuse or palliation for it"]; see also *Evans* v. *Gunter* (1988) 294 S.C. 525 [366 S.E.2d 44, 46-47] [upon showing of extrinsic fraud, husband permitted to *collaterally challenge* support obligations based upon ex-wife's misrepresentations concerning child's parentage].)

## II

The majority concludes the plaintiff's action for intentional infliction of emotional distress is barred under Civil Code section 47, subdivision 2 (hereafter section 47) because he learned he was not the natural father of his son during a judicial proceeding. I believe this conclusion fails to distinguish between conduct occurring during the course of a judicial proceeding which is necessarily protected by section 47's absolute privilege, and conduct which occurs outside of a judicial proceeding but is revealed to the plaintiff during a judicial proceeding.

The distinction between these two situations lies in section 47's requirement that conduct is only privileged if it has "some connection or logical or reasonable relation to the proceeding and that the publication be made to achieve the object of the litigation." (*O'Neil* v. *Cunningham* (1981) 118 Cal.App.3d 466, 475 [173 Cal.Rptr. 422]; see *McClatchy Newspapers, Inc.* v. *Superior Court* (1987) 189 Cal.App.3d 961, 972-973 [234 Cal.Rptr. 702].)

Absent such a relationship, the privilege will not apply even if the conduct or publication is made during a judicial proceeding. (*Financial Corp. of America* v. *Wilburn* (1987) 189 Cal.App.3d 764, 776 [234 Cal.Rptr. 653] ["A document is not privileged merely because it has been filed with a court or in an action. The privileged status of a particular statement therein depends on its relationship to an actual or potential issue in an underlying action"].)

Thus, in *Ribas* v. *Clark* (1985) 38 Cal.3d 355 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417], the Supreme Court held conduct which occurred "prior to and not in the context of, any judicial proceeding" was not protected by section 47's judicial immunity even though the plaintiff learned of the conduct during a judicial proceeding. (*Id.,* at p. 365.)

The conduct here is not, as the majority finds, the wife's statement during the deposition that the plaintiff is not the natural father of her son. Instead, the outrageous conduct upon which the action is based is the wife's initial infidelity resulting in her impregnation coupled with her repeated representations throughout the marriage concerning her son's parentage. This clearly is not reasonably related to the divorce proceeding for purposes of section 47, subdivision 2's application.

The distinction between privileged and nonprivileged judicial statements was highlighted recently in *Durant Software* v *Herman* (1989) 209 Cal.App.3d 229 [257 Cal.Rptr. 200]. There, the court held judicial immunity did not bar an action for conspiracy although evidence of the conspiracy was revealed in the course of a judicial proceeding. Following a well-established line of cases, the court concluded the privilege did not apply since the conduct giving rise to the cause of action occured prior to the judicial proceeding. (*Id.,* at p. 240.) The court further noted the judicial conduct was properly admissible to prove the tort since section 47, subdivision 2 does not create an evidentiary privilege for such judicial conduct or statements. (*Id.,* at pp. 236-237, 240; accord *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168 [232 Cal.Rptr. 567, 728 P.2d 1202]; *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 888 [221 Cal.Rptr. 509, 710 P.2d 309]; *Harris* v *Tashma* (1989) 209 Cal.App.3d 1197, 1205-1207 [258 Cal.Rptr. 20] review granted July 13, 1989 (S010575).)

The majority's application of section 47 to these facts is troublesome. A party may use an unrelated judicial proceeding to reveal tortious conduct previously undiscovered by the other party in an attempt to cloak such conduct with this absolute privilege.

For example, a physician involved in litigation over a fee dispute with his patient could announce during some stage of that lawsuit that he had

committed malpractice against the patient. Under the majority's construction of section 47, the patient would then be barred from pursuing a malpractice action against the physician. This result is neither desirable nor does it promote the purpose underlying section 47, namely, "affording free access to the courts and facilitating the crucial functions of the finder of fact." (*Ribas* v. *Clark, supra,* 38 Cal.3d at pp. 364-365.) Or to bring the analogy closer to the facts of the instant case, imagine the wife had announced during the dissolution proceeding: "You know how you haven't been feeling well the past few months, well, I've been slipping a bit of arsenic into your evening brandy every night." To the extent the majority's opinion suggests section 47 confers immunity merely because a past or ongoing wrong is revealed as part of a judicial proceeding, I respectfully disagree. Conversely, to the extent the majority's opinion does not reach that far, it fails to immunize respondent's intentional conduct which may have been first revealed during the dissolution proceeding but which had been continuing over a period of three and one-half years prior to that proceeding. For reasons mentioned earlier in discussion of the fraud count, however, I reluctantly conclude public policy considerations outweigh by a slight margin the values that would be promoted by allowing a cause of action for intentional infliction of emotional injury in the instant case. Accordingly, I concur in the judgment.

Appellant's petition for review by the Supreme Court was denied August 17, 1989.