42 N.J. Super. 267 (1956)
126 A.2d 203
WILLIAM F. McGRAW AND ANNA E. McGRAW, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
OSCAR JOHNSON AND WALTER A. COOK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1956.
Decided October 24, 1956.
*269 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Hugh C. Spernow argued the cause for appellants.
Mr. John Alden Christie argued the cause for respondent Oscar Johnson.
*270 Mr. Arthur A. Donigian argued the cause for respondent Walter A. Cook.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs sued defendant Johnson for damages resulting from his alleged breach of a building contract, and defendant Cook for his alleged willful and deliberate interference with the completion of that contract. At the close of the entire case the county district court judge granted Johnson's motion for a directed verdict of $57 in favor of plaintiffs and against him, and also granted Cook's motion for a directed verdict in his favor against plaintiffs. An accordant judgment was entered and this appeal followed.
On August 25, 1952 plaintiff William F. McGraw entered into a contract with defendant Johnson, a contractor, for the construction of a dwelling on plaintiffs' lot in Park Ridge, N.J., for $15,300. The agreement did not provide for a completion date in view of the fact that McGraw first had to procure a Veterans' Administration guaranteed mortgage loan. The loan was granted in January 1953. Johnson began work on February 10 and told McGraw that construction would take about four months. There was further talk about the completion date as the work progressed. Johnson first promised the house for August 1, and finally for September 1. McGraw testified he had explained to Johnson that he and his wife would have to give 30 days' notice of intention to vacate their apartment, and Johnson assured him he had nothing to worry about and that the house would be finished on September 1.
The architect testified that the work progressed very well up to August 15, without complaint. There was no unreasonable delay and the house was built in a good and workmanlike manner. By that date it was "99 1/2% completed," to use the language of plaintiffs' counsel. A few very minor details, which would have cost only $57, required attention; in addition, a water meter had to be installed and a toilet bowl connected. The latter item would have cost $10 and taken no more than an hour or two of any plumber's time; all the items together required no more than a day to do.
*271 McGraw said the house was fit to live in on August 15; "there was hardly anything to do" except for connecting up the toilet. Plaintiffs testified that they repeatedly requested Johnson to finish the work, but he failed to do so. The toilet was not connected until just before they moved in on December 11, by which time the necessary certificates had been obtained from the local board of health and the building inspector. Plaintiffs also testified they had met defendant Cook, the plumbing subcontractor, at the dwelling site on August 15. The topic of conversation was the unconnected toilet bowl. Cook complained he had not been paid, and their reply was that he look to Johnson for satisfaction. (We were informed at oral argument that there was more than $1,000 balance then owing from Johnson to Cook for plumbing work.) Apparently the discussion generated some heat, with Cook allegedly saying, "No one is going to move into this house until I say so," and that "he didn't care, he wanted to get paid." There was no subsequent conversation or contact between plaintiffs and Cook.
It is clear from the record that on August 15, the beginning of the alleged delay in completing construction, McGraw was behind in his payments to Johnson. He was scheduled to make the third of four payments under the contract, $4,400, when plastering was finished. This work had been completed in July. McGraw's explanation of his failure to make payment was that Johnson made no request therefor. His testimony shows that he and Johnson did talk about payment sometime in August, for he said Johnson told him that the plumber wanted to be paid. McGraw answered that he and his wife would go to the bank on September 1 to pick up the installment due them under the loan agreement. When they did, they learned that Cook had filed a notice of intention and that the money would not be released by the bank until the lien had been cleared.
However, plaintiffs actually had $4,400 of their own with which they could have paid Johnson, thus putting him in a position to pay Cook and to complete whatever *272 work was necessary. We note this matter simply for the purpose of showing that plaintiffs in good conscience have no reason to complain against Johnson. We recognize, of course, that their failure to pay the third installment did not excuse complete performance by Johnson. The contract here was entire, although payment was to be made in installments at fixed and ascertained times during the course of construction. The covenant to make payments in such a case is treated as an independent one. While its breach gave Johnson a right of action thereon, it did not excuse his non-performance. Magliaro v. Modern Homes, Inc., 115 N.J.L. 151, 155 (E. & A. 1935).
In connection with this incidental discussion of payment of the third installment, it would be well to note our disagreement with plaintiffs' contention that the trial court erred in refusing to admit into evidence a letter sent to McGraw on January 28, 1953 by the lending institution, informing him it had approved of a construction loan, subject to Veterans' Administration guarantee, to be paid in three installments according to the schedule enclosed therein. Defendant Johnson knew of this letter at the time he began work. Plaintiffs' intention in offering the letter was, obviously, to tie Johnson to the schedule of payments under the loan agreement. They thus sought to modify their contract with Johnson, calling for a different schedule of payments. This they could not do without definite proof of his concurrence in that schedule. Such proof was not forthcoming.
Plaintiffs also complain that the trial court fell into error in refusing to permit them to prove their "out-of-pocket" disbursements, namely, monies they claim they were obliged to expend for room rent at a local hotel from October 15 to December 10 while they were awaiting the completion of their home, and for meals eaten and a small item of carfare. Their argument in support is that the house was not completed within a reasonable time, that this amounted to a breach of the construction contract, and therefore they are entitled to the damages claimed because these *273 were reasonably foreseeable. It is settled law that where no time is fixed for the performance of a covenant, the law implies it shall be done within a reasonable time. Wemple v. B.F. Goodrich Co., 126 N.J.L. 465, 469 (E. & A. 1941). Equally well established is the general rule that damages recoverable for a breach of contract must be such as might reasonably be supposed to have been within the contemplation of the parties when the contract was made. Hadley v. Baxendale, 9 Ex. 341 (1854); Van Dusen Aircraft Supplies, Inc. v. Terminal Construction Corp., 3 N.J. 321, 329 (1949).
We consider that the expenditures for which plaintiffs seek recovery cannot reasonably be said to have been within the contemplation of the parties when the construction contract was signed back in August 1952, and they are therefore not recoverable.
The complete answer to plaintiffs' entire claim against Johnson lies in the fact that any damages they might have suffered could have been avoided by the simple device of self-help. In the first place, the specifications which formed part of the contract expressly provided that if Johnson failed to provide men or materials, or violated the contract, McGraw could, after giving seven days' notice, terminate his employment and complete the work at Johnson's expense. He did not do so, although everything he now complains of could have been put in order within the short space of a single working day and at a relatively trifling expense. This would have put a quick end to delay, eliminated the damages now claimed, and obviated the bringing of this action.
In the second place, assuming Johnson did breach the contract, the law requires that a party who has been injured by the breach must make a reasonable effort to mitigate his damages. Frank Stamato & Co. v. Borough of Lodi, 4 N.J. 14, 21 (1950). Plaintiffs chose neither to attend to the incidentals themselves, at a cost of no more than $67, nor to pay promptly the $4,400 then owed and which would have allowed the builder to pay the plumber and have the work finished. Their explanation is that *274 Johnson kept promising from week to week to do the work, but this does not seem a reasonable basis for allowing a substantial damage claim to accumulate when the remedy of self-help was so readily available. Plaintiffs chose, instead, to allow almost four months to pass, while their furniture lay about their new home and the key to the place remained in their pocket.
Exclusion of proof of their hotel and other expenses was therefore not improper. Plaintiffs were not entitled to recover more than the $57 allowed by the court, the toilet connection having been taken care of before occupancy of the house, as noted above.
As for the complaint against defendant Cook, the requirement that plaintiffs mitigate damages prevails as much in the case of damages arising out of tort as it does in the case of breach of contract. 4 Restatement, Torts, § 918, p. 601 (1939). What we have said in this regard concerning the complaint against Johnson applies here as well as to Cook.
But there is a more fundamental flaw in plaintiffs' case against Cook. They charge him with intentional failure to complete his plumbing work, without justification or excuse, thus deliberately and improperly preventing the completion of their home. They failed, however, to make out a case of malicious interference on Cook's part.
"Malice in the legal sense is the intentional doing of a wrongful act without justification or excuse. And a `wrongful act' is any act which in the ordinary course will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right." Louis Schlesinger Co. v. Rice, 4 N.J. 169, 181 (1950).
Kurtz v. Oremland, 33 N.J. Super. 443 (Ch. Div. 1954), affirmed o.b. 16 N.J. 454 (1954). Cook had not been paid, and he told plaintiffs about this when they talked to him on August 15. His refusal to continue work does not spell out malice in the legal sense; he was merely pursuing what he thought was his legal right. If anyone had a cause of action against him for refusing to complete the plumbing *275 contract, it would be Johnson, not plaintiffs. And not having been paid, Cook was simply pursuing a right which he believed was accorded him by the Mechanics Lien Act, N.J.S. 2A:44-64 et seq., 2A:44-71, when he filed his notice of intention.
Cook's conduct was not of a piece with the conduct of the defendants in the Louis Schlesinger Co. and Kurtz cases above. He did not maliciously induce a breach of contract by Johnson, nor did he maliciously or improperly prevent the completion of plaintiffs' home. Nor did he do anything which prevented plaintiffs from occupying the dwelling and themselves completing the details which needed attention  specifically, and what seemed to bother plaintiffs the most, connecting up the toilet fixture.
The judgment under appeal is affirmed.