[No. D004425. Fourth Dist., Div. One. Sept. 25, 1987.]

LEE PERRY, Plaintiff and Appellant, v.
RICHARD C. ATKINSON, Defendant and Respondent.

**COUNSEL**

Suuzen Ty Anderson and Lee Perry, in pro. per, for Plaintiff and Appellant.

Gray, Cary, Ames & Frye and Marilyn L. Huff for Defendant and Respondent.

**OPINION**

**HUFFMAN, J.*—**

Plaintiff Lee Perry appeals a judgment favoring defendant Richard Atkinson after the court granted summary adjudication of issues and sustained Atkinson's demurrer to Perry's second amended complaint for fraud and deceit.

---

*Assigned by the Chairperson of the Judicial Council.

## Factual[1] and Procedural Background

Perry and Atkinson met in July 1976. Although Atkinson was married, he and Perry began having an intimate relationship which continued for more than a year. During that year, Perry and Atkinson developed a relationship of trust and confidence. In August 1977 Perry learned she was pregnant with Atkinson's child. When Perry told Atkinson, he became upset and urged her to have an abortion. Perry did not want to have an abortion, but Atkinson persisted. He told Perry that although he would like her to have his child, he wanted to postpone doing so for a year. He promised Perry that even if they were not together in a year, he would conceive a child with her by artificial insemination.

Based on Atkinson's promise, Perry terminated her pregnancy by an abortion, causing her physical and mental pain. After the abortion, Perry discovered Atkinson had never intended to keep his promise of another baby. As a result, Perry became depressed, requiring psychiatric treatment, incurring extensive medical bills and losing six months of earnings.

Perry sued Atkinson for fraud and deceit and intentional infliction of emotional distress. In essence, Perry alleged she terminated her pregnancy by an abortion based on Atkinson's promise he would impregnate her the following year either through sexual intercourse or artificial insemination. Perry alleged Atkinson's representation was false; he had no intention of impregnating her again; and he made these statements to deceive her in order to have her abort the pregnancy. As to Perry's first amended complaint, Atkinson moved for summary judgment or alternatively summary adjudication of issues. Before the hearing on Atkinson's motions, Perry filed a second amended complaint, adding allegations of physical harm and further facts regarding her confidential relationship with Atkinson. Atkinson demurred to Perry's second amended complaint.

After hearing, the court rendered its written decision, denying Atkinson's motion for summary judgment as to Perry's cause of action for intentional infliction of emotional distress, and granting Atkinson's motion for summary adjudication as to the fraud and deceit cause of action. The court reasoned public policy prohibits a cause of action for fraud and deceit concerning intimate matters involving procreation. The court concluded that to control the promises of the parties by legal action would constitute an unwarranted governmental intrusion into matters affecting the individual's

---

[1] This appeal properly arises from the court's sustaining a demurrer without leave to amend. (See Discussion I, *infra*.) Thus, in stating the facts, we must treat every material, issuable fact properly pleaded as true. (*Commercial Standard Ins. Co.* v. *Bank of America* (1976) 57 Cal.App.3d 241, 246 [129 Cal.Rptr. 91].)

right to privacy. The court also sustained without leave to amend Atkinson's demurrer to Perry's fraud and deceit cause of action in her second amended complaint, reasoning such cause of action would violate public policy and constitute an unwarranted governmental intrusion into matters affecting an individual's right to privacy. The court entered judgment in favor of Atkinson on the cause of action for fraud and deceit.[2] We conclude on the facts here no cause of action exists for fraud and deceit and accordingly affirm the judgment.

DISCUSSION

I

Perry contends the court erred in granting summary adjudication of issues as to her first amended complaint because her second amended complaint superseded the first. She asserts once the court sustained the demurrer without leave to amend, it had nothing to summarily adjudicate as to that cause of action.

Perry filed her first amended complaint on September 22, 1982, and her second amended complaint, with the court's permission, on July 24, 1985. The court heard Atkinson's summary judgment motion to Perry's first amended complaint on September 27, 1985, and took the matter under submission. The court issued its memorandum decision on October 3, granting summary adjudication as to Perry's cause of action for fraud and deceit in her first amended complaint. On October 4, the court heard Atkinson's demurrer to the fraud and deceit cause of action in her second amended complaint, but ruled that issue was moot in light of its memorandum decision granting summary adjudication.

On October 15, Perry filed a motion for reconsideration, arguing, in part, the summary adjudication was improper because the first amended complaint had been superseded by the second. On October 28, the court issued two orders: one granting summary adjudication of the fraud and deceit cause of action in Perry's first and second amended complaints and another sustaining without leave to amend Atkinson's demurrer to the fraud and deceit cause of action in Perry's second amended complaint. On November 1, the court denied Perry's reconsideration motion.

---

[2] Perry proceeded to trial on her causes of action for intentional infliction of emotional distress. During trial, Atkinson, through his attorneys, offered to settle the emotional distress claims for $250,000 if Perry agreed to release Atkinson from liability for any other claims antedating the proposed settlement. Perry agreed, reserving her right to appeal the court's dismissal of her fraud and deceit cause of action. The parties also agreed that if Perry were successful on appeal, she would accept an additional $25,000 as her damages for the fraud and deceit cause of action and not take the case back through trial.

■ We agree with Perry the court improperly granted summary adjudication as to the fraud and deceit cause of action in her first amended complaint. The record reflects the court granted Perry leave to file her second amended complaint with respect to her causes of action for fraud and deceit and intentional infliction of emotional distress. Once Perry did so, that complaint superseded her first amended complaint. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362]; *Avalon Painting Co.* v. *Alert Lbr. Co.* (1965) 234 Cal.App.2d 178, 182 [44 Cal.Rptr. 90].) Thus, we treat the summary adjudication order as void and consider the appeal as properly from the sustaining of a demurrer without leave to amend.

## II

■ Perry contends her second amended complaint states a cause of action for fraud and deceit which is factually and legally sufficient to withstand Atkinson's demurrer. The gravamen of Perry's complaint is that Atkinson defrauded her by promising to impregnate her if she had an abortion—a promise he did not intend to keep—on which he intended her to rely and on which she did rely to her detriment. Such misrepresentation, she asserts, is actionable as a tort.

In deciding whether Perry can state a cause of action for fraud and deceit, our inquiry must be directed to the specific conduct giving rise to such a claim. Although Perry's cause of action is couched in terms of a tort, the behavior of which she complains is Atkinson's breach of a promise to impregnate her after she had an "unwanted" abortion. Thus, the issue before us is whether Perry has a cause of action for fraudulent breach of a promise to impregnate.

In *Stephen K.* v. *Roni L.* (1980) 105 Cal.App.3d 640 [164 Cal.Rptr. 618, 31 A.L.R.4th 383], the defendant father (Stephen) in a paternity action cross-complained against his child's mother (Roni), alleging Roni had falsely represented she was taking birth control pills and in reliance on that representation, Stephen had sexual relations with her resulting in the birth of a child he did not want. The court held Roni's conduct towards Stephen was not actionable, reasoning "although Roni may have lied and betrayed the personal confidence reposed in her by Stephen, the circumstances and the highly intimate nature of the relationship wherein the false representations may have occurred, are such that a court should not define any standard of conduct therefor." (*Id.* at p. 643.) The court further stated that Stephen's claim of tortious misrepresentation was "nothing more than asking the court to supervise the promises made between two consenting adults as to the circumstances of their private sexual conduct. To do so would

encourage unwarranted governmental intrusion into matters affecting the individual's right to privacy." (*Id.* at pp. 644-645.)

We find the court's reasoning in *Stephen K.* persuasive as applied to the facts here. Although Atkinson may have deliberately misrepresented his intentions to Perry in order to persuade her to have the abortion, their procreative decisions were so intensely private that we decline to intervene. Tort liability cannot apply to the choice, however motivated, of whether to conceive or bear a child.

Further, the California Legislature recognizes that certain sexual conduct and interpersonal decisions are, on public policy grounds, outside the realm of tort liability. For example, Civil Code section 43.5 provides in part that no cause of action exists for alienation of affection, seduction of a person over the age of legal consent, or breach of promise of marriage. Also, Civil Code section 43.4 precludes a cause of action for a fraudulent promise to marry or cohabit after marriage, entailing not only the marriage ritual but fulfillment of all "matrimonial obligations and expectations." (*Boyd* v. *Boyd* (1964) 228 Cal.App.2d 374, 377 [39 Cal.Rptr. 400].) If no cause of action can exist in tort for a fraudulent promise to fulfill the rights, duties and obligations of a marriage relationship, then logically no cause of action can exist for a fraudulent promise by a married man to impregnate a woman not his wife. (See *Langley* v. *Schumacker* (1956) 46 Cal.2d 601, 604-607 [297 P.2d 977] (Spence, J., dis.) [superseded by Civ. Code, § 43.4 as stated in *Boyd* v. *Boyd, supra,* 228 Cal.App.2d at p. 376].)

Perry contends Atkinson's right to privacy in fraudulently inducing her to have an abortion must give way to Perry's right to protection from and compensation for physical harm and to the government's interest in protecting the health and welfare of its citizens. In support of her argument, Perry cites *Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369 [193 Cal.Rptr. 422] and *Kathleen K.* v. *Robert B.* (1984) 150 Cal.App.3d 992 [198 Cal.Rptr. 273, 40 A.L.R.4th 1083].

In *Barbara A.,* the court was confronted with the issue of whether a woman who had suffered injuries from an ectopic pregnancy has a cause of action in tort against the responsible man for his misrepresentations of infertility. The court held the plaintiff could state a cause of action for battery and deceit because the right to privacy does not insulate sexual relations from judicial scrutiny when that right is used as a shield from liability at the expense of the other party. (*Barbara A.* v. *John G., supra,* 145 Cal.App.3d at p. 381.) The court attempted to distinguish *Stephen K.* on both factual and public policy grounds: "In essence, Stephen was seeking damages for the 'wrongful birth' of his child [fn. omitted] resulting in

support obligations and alleged damages for mental suffering. Here, no child is involved; appellant is seeking damages for severe injury to her own body. [¶] Although the *Stephen K.* court alluded to Stephen's claim as separate and apart from the issue of either parent's obligation to raise and support the child, it reached its decision without attempting to resolve the problem of the mother's reduced financial ability to support the child if she were required to pay damages to the father. We think this concern over the child, and not governmental intrusion into private sexual matters, . . . is the central issue in *Stephen K.* and compels different public policy considerations." (*Id.* at pp. 378-379.)

We see no significant distinction between *Stephen K.* and *Barbara A.* In both, the complaining parties alleged they engaged in sexual relations induced by a false representation regarding their partners' procreative ability. Both cases fall squarely within Civil Code section 43.5, subdivision (c) precluding a cause of action for seduction. (See *Barbara A.* v. *John G., supra,* 145 Cal.App.3d at p. 386 (Scott, J., dis.).)

The *Barbara A.* court attempts to distinguish its holding from that of *Stephen K.* on the ground no child is involved and the public policy considerations regarding parental obligations are absent in *Barbara A.* However, the court in *Stephen K.* specifically refused to address the issues of child support and parental obligations. (*Stephen K.* v. *Roni L., supra,* 105 Cal.App.3d at p. 643.) Instead, it based its holding on the public policy consideration that "the practice of birth control, if any, engaged in by two partners in a consensual sexual relationship is best left to the individuals involved, free from any governmental interference." (*Id.* at p. 645.) Because *Stephen K.* and *Barbara A.* cannot readily be reconciled, we choose here to follow the sound reasoning of *Stephen K.*

Moreover, Perry's reliance on *Kathleen K.* is misplaced. In that case, a woman brought an action against a man because she had contracted genital herpes through sexual intercourse with him. Citing *Barbara A.,* the court held the constitutional right of privacy did not protect the defendant from his tortious conduct in failing to inform the plaintiff he was infected with venereal disease. "The right of privacy is not absolute, and in some cases is subordinate to the state's fundamental right to enact laws which promote public health, welfare and safety, even though such laws may invade the offender's right of privacy. *(Barbara A.* v. *John G., supra,* 145 Cal.App.3d at p. 380.)" (*Kathleen K.* v. *Robert B., supra,* 150 Cal.App.3d at p. 996.) The court further reasoned that "as in *Barbara A.,* there is no child involved, and the public policy considerations with respect to parental obligations are absent." (*Ibid.*)

*Kathleen K.* is distinguishable from the present case. The tortious transmission of a contagious disease implicates policy considerations beyond the sexual conduct and procreative decisions of two consenting adults. The state's interest "in the prevention and control of contagious and dangerous diseases" (*id.* at p. 996), is sufficient to allow a cause of action for fraudulent concealment of the risk of infection with venereal disease. The absence of such policy considerations here compels a different result.

In essence, Perry seeks judicial enforcement, by way of damages, of a promise to impregnate. The courts should not undertake the adjudication of promises and representations made by consenting adults regarding their sexual relationships. Once we attempt to determine in court, by means of tort law, the bona fides of promises such as are alleged here, we will of necessity be required to set standards for the making and performing of such promises. The court in *Stephen K.* and the Legislature by its actions in passing statutes such as Civil Code sections 43.4 and 43.5 have given wise counsel against such folly.

Public policy compels our holding no cause of action exists for Atkinson's fraud and deceit in misrepresenting his intentions to provide Perry with the means to have a child.

### DISPOSITION

Judgment affirmed.

Kremer, P. J., and Butler, J., concurred.

A petition for a rehearing was denied October 15, 1987, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 7, 1988.