■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

merit as DEP's conditions for approval of an in-county back-up facility are reasonable, as noted.

Affirmed.

■■■■■■■■■■■■■

C.A.M., PLAINTIFF–APPELLANT, v. R.A.W., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 25, 1989—Decided January 9, 1990.

Before Judges PETRELLA,[1] O'BRIEN and STERN.

*Sandra DeSarno Hlatky* argued the cause for appellant (*Shebell & Schibell,* attorneys; *Sandra DeSarno Hlatky,* on the brief).

*Ronald B. Rosen* argued the cause for respondent (*Chamlin, Schottland, Rosen, Cavanagh & Uliano,* attorneys; *Ronald B. Rosen,* of counsel; *Jay L. Wilensky,* on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

Plaintiff appeals from a summary judgment in favor of defendant. In her complaint, she asserted a variety of claims against defendant arising out of his false representation to her that he had had a vasectomy, on the basis of which she engaged in sexual intercourse with him resulting in the birth of a normal, healthy child. In granting summary judgment to defendant the trial judge ruled that, except for a paternity claim pursuant to *N.J.S.A.* 9:17–38 *et seq.,* and *R.* 5:14–1 *et seq.,* plaintiff had no independent cause of action for damages in this State. We agree and affirm.

On December 5, 1987, plaintiff gave birth to a normal, healthy child. By order of October 17, 1988, the Family Part of the Chancery Division declared defendant the father of that child (by agreement on the record in open court under oath). Defendant was ordered to pay $95 per week support for the child, to obtain Blue Cross, Blue Shield and Major Medical coverage, to be paid 80% by defendant and 20% by plaintiff, to pay one-half of the child's uncovered medical expenses, and to obtain a $25,000 whole life or term insurance policy for the

---

[1]Judge Petrella did not participate in oral argument. However, the parties consented at oral argument to his participation in the decision.

child with plaintiff mother as trustee. Defendant was also ordered to pay the sum of $5,000 in full payment of all outstanding arrears for support and uncovered medical expenses.

Meanwhile, on April 28, 1988, plaintiff filed a separate action against defendant. Despite her acknowledgement in a later certification that she engaged in voluntary sexual relations with defendant while using a contraceptive sponge form of birth control, in her complaint, as amended on May 23, 1988, plaintiff alleged that she engaged in a "personal relationship" with defendant in reliance upon his representations that "he was single and incapable of impregnating" her because he had undergone a vasectomy. She sought relief for negligent misrepresentation, tortious interference with prospective economic advantage or contractual relationship, equitable and legal fraud, and negligent and intentional infliction of emotional distress. She sought damages for physical pain and suffering during her pregnancy and post delivery recuperation and loss of income from her business. She also sought punitive damages on some of the counts. In his answer, defendant admitted telling plaintiff he had undergone a vasectomy, but claimed it was said in jest. By way of separate defense, defendant claimed plaintiff's complaint failed to state a cause of action, was duplicative of the paternity action then pending in the Family Part, and was barred by the equitable doctrines of unclean hands, laches and waiver.

Defendant moved for summary judgment, supported by his certification. In her responding certification, plaintiff alleged that the first time she engaged in sexual intercourse with defendant was in March 1987 while they were in Mexico together. She said the first several times they engaged in sexual intercourse she used a contraceptive sponge for birth control. However, when she informed defendant of her use of this device, he told her she did not have to use any birth control because he had had a vasectomy. Because of her belief that he

was telling the truth,[2] plaintiff engaged in sexual intercourse with defendant without any form of birth control. Although defendant did not entirely agree with plaintiff's version of the facts, he conceded that for purposes of his summary judgment motion plaintiff's version of the facts must be accepted as true. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 73–75 (1954); *Pierce v. Ortho Pharmaceutical Corp.,* 84 *N.J.* 58, 65 (1980).

In a short oral opinion delivered on October 28, 1988, the trial judge granted summary judgment to defendant. The judge found no legal precedent in this state on the issue presented, but noted the existence of some out-of-state cases dealing with the subject. He relied in particular upon *Stephen K. v. Roni L.,* 105 *Cal.App.*3d 640, 164 *Cal.Rptr.* 618 (Cal.Ct. of App. 2 Dist.1980), and *L. Pamela P. v. Frank S.,* 88 *A.D.*2d 865, 451 *N.Y.S.*2d 766 (App.Div.1982), aff'd 59 *N.Y.*2d 1, 449 *N.E.*2d 713, 462 *N.Y.S.*2d 819 (Ct.App.1983).

Since the issue is one of first impression in this state it requires a policy determination. In making that decision we are greatly aided by the California court. In *Stephen K. v. Roni L., supra,* a mother and her minor child brought a paternity suit against Stephen K., who, after admitting paternity, filed a cross-claim [counterclaim] "for fraud, negligent misrepresentation and negligence" seeking compensatory and punitive damages for the "wrongful birth" of his child. 164 *Cal. Rptr.* at 619. He claimed the child's mother had falsely represented to him that she was taking birth control pills and that, in reliance upon her representation, he engaged in sexual intercourse with her, eventually resulting in the birth of the child. The court found that such claims arise from conduct so intensely private that the court should not be asked, nor attempt to

---

[2]Since both parties were adults and consented to the relationship, an issue of reasonable reliance might well arise in these circumstances. Plaintiff also said she first learned defendant was married after she became pregnant with his child.

resolve them. Concluding that, although the mother may have lied and betrayed the personal confidence reposed in her by Stephen, the circumstances and the highly intimate nature of the relationship wherein the false representations may have occurred, are such that a court should not define any standard of conduct therefor. The court continued:

> The claim of Stephen is phrased in the language of the tort of misrepresentation. Despite its legalism, it is nothing more than asking the court to supervise the promises made between two consenting adults as to the circumstances of their private sexual conduct. To do so would encourage unwarranted governmental intrusion into matters affecting the individual's right to privacy. In *Stanley v. Georgia* (1969) 394 *U.S.* 557, 564, 89 *S.Ct.* 1243, 1247, 22 *L.Ed.*2d 542, the high court recognized the right to privacy as the most comprehensive of rights and the right most valued in our civilization. Courts have long recognized a right of privacy in matters relating to marriage, family and sex (see e.g. *People v. Belous*, (1969) 71 *Cal.*2d 954, 963, 80 *Cal.Rptr.* 354, 458 *P.*2d 194, regarding the right of a woman to bear children; *Griswold v. Connecticut* (1965) 381 *U.S.* 479, 485–486, 85 *S.Ct.* 1678, 1682, 14 *L.Ed.*2d 510, concerning state law forbidding use of contraceptives by married couples; *Eisenstadt v. Baird* (1972) 405 *U.S.* 438, 453–455, 92 *S.Ct.* 1029, 1038–1039, 31 *L.Ed.*2d 349, regarding state law prohibiting distribution of contraceptives to unmarried persons).
>
> We reject Stephen's contention that tortious liability should be imposed against Roni, and conclude that as a matter of public policy the practice of birth control, if any, engaged in by two partners in a consensual sexual relationship is best left to the individuals involved, free from any governmental interference. [164 *Cal.Rptr.* at 620–621.]

We agree with these expressions by the California court.[3] These principles have also been followed by our sister states of New York and Pennsylvania. In *L. Pamela v. Frank S.*, *supra*, the New York Court of Appeals affirmed the Appellate Division's decision that the deliberate misrepresentation by the mother concerning her use of contraception had no bearing on the father's obligation to support his child. In reaching that conclusion, the court conceded that the father had a constitutionally protected right to decide for himself whether to father a child, which involved the freedom to decide for oneself without unreasonable governmental interference whether to avoid

---

[3]*Stephen K. v. Roni L.* is the subject of an annotation at 31 *A.L.R.*4th 383. There is apparently a dearth of cases and none supporting plaintiff's position.

procreation through the use of contraception. However, the court concluded:

> This aspect of the right of privacy has never been extended so far as to regulate the conduct of private actors as between themselves. Indeed, as the Appellate Division recognized, judicial inquiry into so fundamentally private and intimate conduct as is required to determine the validity of respondent's assertions may itself involve impermissible State interference with the privacy of these individuals (see, also, *Stephen K. v. Roni L.*, 105 *Cal.App.*3rd 640, 164 *Cal.Rptr.* 618). [462 *N.Y.S.*2d at 822.]

The Supreme Court of Pennsylvania reached a similar conclusion in *Hughes v. Hutt*, 500 *Pa.* 209, 455 *A.*2d 623, 625 (Pa. 1983), in which a father sought to raise as a defense or counterclaim an allegation that the mother deceived him into believing she was practicing birth control when in fact she was not. In a footnote, the court noted that its conclusions were shared by the courts of California and New York, citing *Stephen K. v. Roni L., supra,* and *L. Pamela P. v. Frank S., supra.*

We recognize that in all three of these out-of-state cases the issue arose by way of a father's counterclaim to a suit seeking to establish paternity and support for the child, whereas, in this case, it is the mother who seeks a personal recovery from the father, the questions of paternity and support having been resolved in a separate proceeding.[4] However, the courts of California were again called upon to address this issue in a suit by a female against a male for fraud and deceit, and intentional infliction of emotional distress arising out of their sexual relationship. In *Perry v. Atkinson*, 195 *Cal.App.*3d 14, 240 *Cal. Rptr.* 402 (Cal.Ct.App. 4 Dist.1987), Perry alleged that she terminated her pregnancy by abortion based upon Atkinson's promise that he would impregnate her the following year either through sexual intercourse or artificial insemination. She alleged the representation was false, and that he had no intention

---

[4]As the dissent notes, defendant does not expressly assert the entire controversy doctrine, *R.* 4:27–1, although his second separate defense is that the action is duplicative of the paternity action then pending.

of impregnating her again and made these statements to deceive her into aborting her pregnancy. The trial court concluded that public policy prohibits a cause of action for fraud and deceit concerning intimate matters involving procreation. It further found that to adjudicate the promises of the parties by legal action constituted an unwarranted governmental intrusion into matters affecting the individuals' right to privacy and would violate public policy. However, it denied Atkinson's motion for summary judgment as to Perry's claim for intentional infliction of emotional distress.[5] In affirming the trial court, the appellate court found the reasoning in *Stephen K. v. Roni L., supra,* persuasive as applied to the facts. The court held:

> Although Atkinson may have deliberately misrepresented his intentions to Perry in order to persuade her to have an abortion, their procreative decisions were so intensely private that we decline to intervene. Tort liability cannot apply to the choice, however motivated, of whether to conceive or bear a child. [240 *Cal.Rptr.* at 404.]

The *Perry* court then noted that the California Legislature had recognized that certain sexual conduct in interpersonal decisions are, on public policy grounds, outside the realm of tort liability, citing *inter alia,* a statutory provision that no cause of action exists for alienation of affections.[6] The court continued:

> If no cause of action can exist in tort for a fraudulent promise to fulfill the rights, duties and obligations of a marriage relationship, then logically no cause of action can exist for a fraudulent promise by a married man to impregnate a woman not his wife. [240 *Cal.Rptr.* at 405.]

The *Perry* court made reference to two decisions since *Stephen K. v. Roni L.,* which appeared to have reached a different result. In *Barbara A. v. John G.,* 145 *Cal.App.*3d 369, 193 *Cal.Rptr.* 422 (Cal.Ct.App. 1 Dist.1983), the court was confronted with the issue of whether a woman who has suffered injuries from an ectopic pregnancy has a cause of action in tort

---

[5]That claim went to trial and was eventually settled. 240 *Cal.Rptr.* at 403.

[6]We have a similar statute in New Jersey abolishing suits for damages for alienation of affections, criminal conversation, seduction or breach of contract to marry. *N.J.S.A.* 2A:23–1.

against the man responsible for his misrepresentations of infertility. The court held the plaintiff had stated a cause of action for battery and deceit because the right to privacy does not insulate sexual relations from judicial scrutiny when that right is used as a shield from liability at the expense of the other party. In *Barbara A.*, the court attempted to distinguish *Stephen K.* on both factual and public policy grounds, saying:

> In essence, Stephen was seeking damages for the 'wrongful birth' of his child [footnote omitted] resulting in support obligations and alleged damages for mental suffering. Here, no child is involved; appellant is seeking damages for severe injury to her own body.
>
> Although the *Stephen K.* court alluded to Stephen's claim as separate and apart from the issue of either parent's obligation to raise and support the child, it reached its decision without attempting to resolve the problem of the mother's reduced financial ability to support the child if she were required to pay damages to the father. We think this concern over the child, and not governmental intrusion into private sexual matters, ... is the central issue in *Stephen K.* and compels different public policy considerations. [193 *Cal.Rptr.* at 429.]

The *Perry* court disagreed with that conclusion, finding that instead, *Stephen K. v. Roni L.* had been based "on the public policy consideration that 'the practice of birth control, if any, engaged in by two partners in a consensual sexual relationship is best left to the individuals involved, free from any governmental interference' " and it chose to follow the "sound reasoning" of *Stephen K.*, 240 *Cal.Rptr.* at 406.

The *Perry* court also referred to *Kathleen K. v. Robert B.*, 150 *Cal.App.*3d 992, 198 *Cal.Rptr.* 273 (Cal.Ct.App. 2 Dist. 1984). There, a woman brought an action against a man because she had contracted genital herpes from sexual intercourse with him. The court in *Kathleen K.* concluded that the constitutional right of privacy did not protect the defendant from his tortious conduct in failing to inform the plaintiff he was infected with venereal disease. The court concluded, "The right of privacy is not absolute, and in some cases is subordinate to the state's fundamental right to enact laws which promote public health, welfare and safety, even though such laws may invade the offender's right of privacy." 198 *Cal. Rptr.* at 276. That court also reasoned, "... as in *Barbara A.*,

there is no child involved, and the public policy consideration with respect to parental obligations are absent." 198 *Cal.Rptr.* at 275. A similar result was reached in New Jersey by the Family Part of our Chancery Division in *G.L. v. M.L.*, 228 *N.J.Super.* 566 (Ch.Div.1988). The *Perry* court went on to distinguish the *Kathleen K.* decision, noting that:

> The tortious transmission of a contagious disease implicates policy considerations beyond the sexual conduct and procreative decisions of two consenting adults. The state's interest 'in the prevention and control of contagious and dangerous disease [citation omitted] is sufficient to allow a cause of action for fraudulent concealment of the risk of infection with venereal disease. The absence of such policy considerations here compels a different result. [240 *Cal.Rptr.* at 406.]

The same reasoning distinguishes the instant case from the result reached here in New Jersey in *G.L. v. M.L.*

Most recently a California court dealt with this problem in *Richard P. v. Gerald B.*, 202 *Cal.App.*3d 1089, 249 *Cal.Rptr.* 246 (Cal.App. 1 Dist.1988). Gerald B. sued Richard P. for fraud and intentional infliction of emotional distress, alleging that Richard fathered two children born to Linda B. while she was Gerald's wife. In various counts of the complaint it was alleged that Richard misrepresented that Gerald was the father. In reversing a trial judge's denial of a demurrer to the complaint, the Court of Appeals for the 1st District in California,[7] said:

> We agree with real parties in interest that they have alleged words which normally would suffice to state tort causes of action for fraud and intentional infliction of emotional distress. We feel that the subject matter of the action, however, is not one in which it is appropriate for the courts to intervene. 'Broadly speaking, the word "tort" means a civil wrong, other than a breach of contract, for which the law will provide a remedy in the form of an action for damages. It does not lie within the power of any judicial system, however, to remedy all human wrongs. There are many wrongs which in themselves are flagrant. For instance, such wrongs as betrayal, brutal words, and heartless disregard of the feelings of others are beyond any effective legal remedy in any

---

[7] The court granted plaintiffs, who were Gerald and his mother and stepfather, leave to amend the complaint to attempt to plead a claim, not sounding in tort, for reimbursement of out-of-pocket expenditures made to support Richard's children.

practical administration of law.' (Prosser [& Keaton], Torts (3d ed. 1964) ch. 1 §§ 1 and 4, pp. 1–2, 18, 21.) To attempt to correct such wrongs or give relief from their effects 'may do more social damage than if the law leaves them alone.' (Ploscowe, *an action for 'wrongful life'* (1963), 38 *N.Y.Univ.Law Review*, 1078, 1080) (*Stephen K. v. Roni L.* (1980), 105 *Cal.App.*3d 640, 642–643, 164 *Cal.Rptr.* 618). [249 *Cal.Rptr.* at 249.]

The *Richard P.* court distinguished both *Barbara A.* and *Kathleen K.* on the ground that those cases involved physical injury to plaintiff and had no potential for harming innocent children. The court noted that the *Kathleen K.* court had said, quoting from the *Barbara A.* court:

... [W]e think it is not sound social policy to allow one parent to sue the other over the wrongful birth of their child. Using the child as the damage element in a tortious claim of one parent against the other could seldom, if ever, result in benefit to the child. [198 *Cal.Rptr.* at 275.]

We agree with the various sentiments expressed by the California courts, although we recognize that in *Perry* the court permitted plaintiff's claim for intentional infliction of emotional distress. However, in that case there was no allegation of the wrongful birth of a child. Where there is a normal, healthy child, as in this case, the California courts have said it is not sound social policy to allow one parent to sue the other over the wrongful birth of their child, and that using the child as the damage element in a tortious claim of one parent against the other could seldom, if ever, result in benefit to a child. Those principles are clearly applicable in this case.

We conclude that the birth of a normal, healthy child as a consequence of a sexual relationship between consenting adults precludes inquiry by the courts into representations that may have been made before or during that relationship by either of the partners concerning birth control. We recognize the seeming applicability of traditional tort principles to a misrepresentation such as that in this case, resulting in the birth of a child to a woman with resultant labor pain attendant to the birth, followed by expense, inconvenience, and loss of income because of the birth and existence of the child. We further recognize that we have specifically authorized recovery of some of these expenses in a medical malpractice suit by a husband and wife

against a doctor for his negligence in connection with a sterilization procedure, where a normal, healthy child was born in *P. v. Portadin,* 179 *N.J.Super.* 465 (App.Div.1981).[8] We also recognize that in *M. and wife v. Schmid Laboratories, Inc.,* 178 *N.J.Super.* 122 (App.Div.1981), a suit by a husband and wife against a condom manufacturer alleging that normal, healthy twins were born as a result of the negligent manufacture of a condom, we authorized the defendant manufacturer to maintain its counterclaim for contribution against the husband for his negligent use of the contraceptive device. We reached this conclusion, in spite of the husband's argument that he was having intercourse with his wife in the privacy of their bedroom when the defective product failed to prevent impregnation and resultant damages. We also concluded defendant could not cloak his actions with interspousal immunity, because

> While some matters or proceedings between a husband and wife within the privacy of the bedroom may remain within the protection of interspousal immunity, it is clear plaintiffs have lifted the veil of secrecy here and place

---

[8]Based upon *Berman v. Allan,* 80 *N.J.* 421 (1979), in *Portadin* we precluded recovery for the future expense which the parents will incur in raising, educating and supervising the child. Quoting the Wisconsin Supreme Court in *Rieck v. Medical Protective Co. of Fort Wayne, Ind.,* 64 *Wis.*2d 514, 219 *N.W.*2d 242 (Sup.Ct.1974), we said:

> To permit the parents to keep their child and shift the entire cost of its upbringing to a physician who failed to determine or inform them of the fact of pregnancy would be to create a new category of surrogate parent. Every child's smile, every bond of love and affection, every reason for parental pride in a child's achievements, every contribution by the child to the welfare and well-being of the family and parents, is to remain with the mother and father. For the most part, these are intangible benefits, but they are nonetheless real. On the other hand, every financial cost or detriment—what the complaint terms "hard money damages"—including the cost of food, clothing and education, would be shifted to the physician who allegedly failed to timely diagnose the fact of pregnancy. We hold that such result would be wholly out of proportion to the culpability involved, and that the allowance of recovery would place too unreasonable a burden upon physicians, under the facts and circumstances here alleged. [179 *N.J.Super.* at 471.]

We do not know whether plaintiff in this case offered defendant custody of the child or what, if any, visitation arrangements have been made.

squarely in issue all the facts surrounding their use or misuse of the alleged defective product.  [178 *N.J.Super.* at 125.]

In contrast to those cases, the recovery sought in this case by the mother is against the father of the child, and not against a third party, such as a physician for malpractice or a condom manufacture for product liability.  Nor is this a case in which the resultant child suffers from some abnormality as in *Berman v. Allan, supra, Schroeder v. Perkel,* 87 *N.J.* 53 (1981), or *Procanik by Procanik v. Cillo,* 97 *N.J.* 339 (1984).

As we view this case, plaintiff seeks to recover damages for the wrongful birth of her normal, healthy child.  She alleges as damages, in addition to the labor pain attendant upon the birth of the child, her inability to work while pregnant and during recuperation, and damage to her business.  If normal tort principles are applicable to plaintiff's claim, it would seem that normal defenses should be available to defendant.  One defense might be whether there was reasonable reliance on defendant's status; another might be mitigation of damages.  It is well settled that injured parties have a duty to take reasonable steps to mitigate their damages.  *McDonald v. Mianecki,* 79 *N.J.* 275, 299 (1979).  The requirement that plaintiffs mitigate damages prevails as much in the case of damages arising out of tort as it does in the case of breach of contract.  *McGraw v. Johnson,* 42 *N.J.Super.* 267, 274 (App.Div.1956).[9]  We discussed this question in *Comras v. Lewin,* 183 *N.J.Super.* 42 (App.Div.1982).  There, a woman sued a doctor for wrongful birth of a defective child, and the trial judge dismissed the action because plaintiff could have had an abortion at the time

---

[9]We recognize that in this case defendant has not asserted in his answer plaintiff's duty to mitigate her damages.  Mitigation of damages has been referred to as an affirmative defense.  *See Roselle v. La Fera Contracting Co.,* 18 *N.J.Super.* 19, 28 (Ch.Div.1952); *but see Becker v. Kelsey,* 9 *N.J.Misc.* 1265, 1273 (Sup.Ct.1931).  However, in *McGraw v. Johnson, supra,* we said at 42 *N.J.Super.* 273, the "law requires" an injured party to mitigate damages.  Moreover, in her brief plaintiff correctly argues that she alone has the right to decide whether to terminate her pregnancy by abortion, citing *Roe v. Wade,* 410 *U.S.* 113, 93 *S.Ct.* 705, 35 *L.Ed.*2d 147 (1973).

she found out she was pregnant. We reversed the trial judge's decision concluding that the enhanced risks of an abortion delayed to the second trimester, because of defendant's negligent failure to make a timely diagnosis of her pregnancy, were of such a nature and magnitude that, even though abortion remains lawfully available, she was effectively denied a meaningful opportunity to decide whether the fetus should be aborted. *Id.* at 46. The theory of that plaintiff's case was that, had her pregnancy been confirmed in the first trimester, she would have aborted it because of the peculiar and known risks of bearing a defective child arising from her age and history of diabetes, but defendant's negligence had delayed a diagnosis until the second trimester. *Id.* at 44–45.

In this case, according to plaintiff's contentions, the child was unwanted from the beginning. At the time plaintiff first became aware she was pregnant, she had the legal right to safely abort the fetus. Thus a claim might be made that plaintiff should have mitigated her damages. We recognize there are a variety of reasons why a woman may decide not to undergo an abortion. However, we question whether a plaintiff in a tort action for the wrongful birth of a normal, healthy child may decide to have the child and then look to defendant for damages of the type sought by plaintiff in this case.

Our dissenting colleague recognizes that the trial judge and the jury may have to face some extremely difficult issues relating to the question of damages sustained by plaintiff. As to mitigation of damages he appropriately cites *In re University of Ariz. v. Superior Court,* 136 *Ariz.* 579, 667 *P.*2d 1294 (Ariz.1983). In that case the court addressed the question of the appropriate rule of damages where a normal, healthy child was born to a couple after an unsuccessful vasectomy undergone by the husband because they did not want any more children. The couple sued for malpractice and the court decided upon a full damage rule with offsets for the benefits of the parent/child relationship. However, as to mitigation of damages, the court said, in a footnote, it did not mean that parents

should be forced to mitigate damages by choosing abortion or adoption or that the failure to do so may be considered an offset. However, that case does not involve a suit by one parent against the other, but rather is a malpractice case similar to *P. v. Portadin, supra,* where we noted the intangible benefits of having a child. *See* footnote 8.

Although we do not decide whether the father in this case can assert mitigation of damages (or an offset for the intangible benefits of having a normal, healthy child), the potential for such a defense underscores our conclusion that courts should not intrude into this manifestly private relationship between consenting adults by inquiring into the circumstances resulting in conception and the damages resulting from the alleged wrongful birth, beyond the recognized obligation of the parents to provide complete support for that child and the father to pay some or all of the medical expenses. The specter of the mother claiming as her damages the wrongful existence of her normal, healthy child in addition to her claim for labor pain attendant upon the child's birth, and the father potentially arguing that the mother should have mitigated her damages by aborting their child, clearly support the conclusion of the California courts and our sister states that we should not embark upon the resolution of such a dispute.

While there is facial logic to the conclusion of our dissenting colleague that dismissal at this stage is premature, we conclude that the very public policy reasons which dictate that such causes of action should not lie would be defeated if the matter proceeded to trial, even if it were dismissed on the grounds we state after presentation of some or all of the evidence. If the causes of action alleged in the complaint fall within the invasion of privacy concept espoused by the California court and adopted by us herein, the action should be dismissed before the presentation of any evidence. Summary judgment was clearly appropriate.

We conclude, for the reasons stated, that plaintiff's claims against defendant are not cognizable in the State of New Jersey on public policy grounds. This is particularly so since defendant has been ordered to support the child and compensate plaintiff for her expenses attendant upon the child's birth. We conclude that compensatory or punitive damages may not be recovered by plaintiff individually on the causes of action pled by her where the alleged wrong resulted in the birth of a normal, healthy child.

Affirmed.

STERN, J.A.D., dissenting.

The issue before us is not whether plaintiff has alleged sufficient facts to satisfy the elements of the various claims she asserts. Rather, the question is only whether that issue and others related to her claims can be addressed in the courts of New Jersey. The trial judge dismissed the complaint only because there is "a clear jurisdictional reluctance to support a cause of action based on fraudulent misrepresentation of one's ability to have or not have a child." He concluded that "the Court's reluctance extends from an unwillingness to introduce state authority into this area."

I cannot join the majority in affirming that conclusion in this case. I agree wholeheartedly with my colleagues that what occurs in the bedroom between consenting adults is protected by a constitutional right of privacy and should not be cognizable in our courts. However, this case is premised on the assertion that plaintiff's "consent" to having sex with defendant and not taking her normal birth control precautions was based on his fraudulent misrepresentation. In other contexts our judges and juries frequently review factual disputes and decide if sexual relationships involve nonconsensual or otherwise unlawful conduct. *See N.J.S.A.* 2C:14–2, 2C:14–3, 2C:14–5. More significantly, with respect to civil claims, our courts have held that even a spouse can bring a personal injury action

"based on transmittal of a sexual disease". *G.L. v. M.L.*, 228 *N.J.Super.* 566, 571 (Ch.Div.1988). *G.L.* quoted from *Kathleen K. v. Robert B.*, 150 *Cal.App.*3d 992, 198 *Cal.Rptr.* 273, 277 (Cal.App. 2 Dist.1984), which held that a woman could recover damages stemming from a man's failure to inform her before intercourse that he had contracted genital herpes. The court found that the right to privacy did not prevent recovery where the "[c]onsent to sexual intercourse [was] vitiated by one partner's fraudulent concealment of the risk of infection with venereal disease ..., whether or not the partners involved are married to each other." *Kathleen K. v. Robert B., supra,* 150 *Cal.App.*3d at 997, 198 *Cal.Rptr.* at 277.[1]

If physical injury premised on the failure of a spouse or nonspouse sexual partner to disclose a contagious disease is actionable, *see also B.N. v. K.K.*, 312 *Md.* 135, 152, 538 *A.*2d 1175, 1184 (Md.1988), I fail to see why another type of fraud resulting in the "unprotected" sexual relationship should not be cognizable at least where the sexual activity has impact on plaintiff's physical condition. *Cf. Frame v. Kothari*, 115 *N.J.* 638 (1989); *Giardina v. Bennett*, 111 *N.J.* 412 (1988) with respect to the emotional distress claim. *See also Alice D. v. William M.*, 113 *Misc.*2d 940, 450 *N.Y.S.*2d 350 (N.Y.City Civ. Ct.1982) (cause of action for negligent misrepresentation resulting in pregnancy sustained).

---

[1] I recognize, as pointed out by the majority, that *Kathleen K.* stated that the claim was cognizable under *Barbara A. v. John G.*, 145 *Cal.App.*3d 369, 193 *Cal.Rptr.* 422 (Cal.App. 1 Dist.1983) because of "[t]he tortious nature of respondent's conduct, coupled with the interest of the state in the prevention and control of contagious and dangerous diseases ..." 150 *Cal.App.*3d at 996, 198 *Cal.Rptr.* at 276. *See also Richard P. v. Superior Court*, 202 *Cal.App.*3d 1089, 249 *Cal.Rptr.* 246 (Cal.App. 1 Dist.1988). *Compare Perry v. Atkinson*, 195 *Cal.App.*3d 14, 240 *Cal.Rptr.* 402 (Cal.App. 4 Dist.1987). The fear of fraudulent claims, *see Barbara A. v. John G., supra,* 193 *Cal.Rptr.* at 428, has no real validity in light of our policy which even permits certain claims between spouses to be considered on their merits. *See e.g., Merenoff v. Merenoff,* 76 *N.J.* 535, 557 (1978).

The plaintiff here alleges that she engaged in "unprotected" sexual intercourse based upon a knowing misrepresentation. But more than mere intercourse is involved. *Compare, State v. Saunders,* 75 *N.J.* 200 (1977). Plaintiff became pregnant and gave birth. She claims that she had to reduce work, if not abandon her profession, at least during pregnancy, and independent of the time she was out of work during pregnancy, she will be diverted from her chosen profession and social activities because of the time, effort and attention it will take to raise and care for the child. Further, she will have expenses in this regard independent of those provided in the support order and the medical expenses which defendant must reimburse for the childbirth.[2]

Plaintiff may have a difficult time proving that she justifiably relied on the misrepresentation that defendant had a vasectomy and could not impregnate her. She may also have difficulty meeting her burden of proving that his misrepresentation caused her to engage in sexual intercourse without taking her usual birth control precautions and was thus a "proximate cause" of the pregnancy. And, if the case goes that far, the trial judge and jury may have to face some extremely difficult issues relating to the question of damages sustained by *plaintiff. See, e.g., Berman v. Allan,* 80 *N.J.* 421, 430–434 (1979); *Procanik by Procanik v. Cillo,* 97 *N.J.* 339, 353–355 (1984); *P. v. Portadin,* 179 *N.J.Super.* 465, 470–472 (App.Div.1981); *M. and Wife v. Schmid Laboratories Inc.,* 178 *N.J.Super.* 122, 126–127 (App.Div.1981). *See also University of Ariz. v. Superior Court,* 136 *Ariz.* 579, 667 *P.*2d 1294 (Ariz.1983) (giving

---

[2]Defendant does not expressly assert the "single controversy" doctrine as a bar to relief. Given the 1983 constitutional amendment merging the jurisdiction of the Juvenile and Domestic Relations Court into the Superior Court, and the establishment of the Family Part of the Chancery Division, issues might arise as to the need for consideration of this subject as part of a "single controversy" in the Superior Court. *Cf. Tevis v. Tevis,* 79 *N.J.* 422, 434 (1979). I would not preclude consideration of the issue in the future, but it was not asserted as a basis for dismissal before us.

birth to a normal, healthy child does not preclude damages); Annotation, "Tort Liability for Wrongfully Causing One to be Born", 83 *A.L.R.*3rd 15 (1978). These issues simply are not now before us in this case, and our concern with the policies and difficulties flowing from these questions, should they be reached, cannot form an underlying basis for affirming on the premise that the judiciary should not consider them at all.

There is much to be said for the position articulately developed by my colleagues. I, too, am concerned about a "potential for harming innocent children" and recognize that "using the child as the damage element in a tortious claim of one parent against the other could seldom, if ever, result in benefit to a child." (Majority op. at 541–542). But the majority concludes that the birth of a normal, healthy child in effect precludes all damages, and does so notwithstanding the misrepresentation of one partner to the sexual act. And it so holds in a case where the mitigation issue was neither raised, briefed nor argued.[3] Moreover, the holding of the majority is essentially based on cases which, as the majority notes, understandably and appropriately reject defenses to paternity and support actions. However, here, the right of privacy is being used as "a shield from liability." (Majority op. at 539). *See Barbara A. v. John G., supra.*

_____

[3]In fact, as the majority notes, "defendant has not asserted in his answer plaintiff's duty to mitigate damages" (majority op. at 543, n. 9). Moreover, as the majority further notes, "plaintiff correctly argues that she alone has the right to decide whether to terminate her pregnancy by abortion" (id.). I have real questions concerning application of the mitigation principle in these circumstances and would not decide the issue in this context. *See University of Ariz. v. Superior Court, supra,* 667 *P.*2d at 1301, n. 5, where a majority of the Supreme Court of Arizona rejected a mitigation argument, noting that parents who gave birth to a normal and healthy, but unwanted child, "should not be precluded from recovering damages because they select the most desirable of ... unpalatable choices," quoting *Cockrum v. Baumgartner,* 95 *Ill.*2d 193, 207, 69 *Ill.Dec.* 168, 175, 447 *N.E.*2d 385, 392 (1983) (Clark, J., dissenting). Note that the Arizona court permits the jury "to assess and offset the pecuniary and non-pecuniary benefits which will inure" by virtue of the relationship with the child. *University of Ariz. v. Superior Court, supra,* 667 *P.*2d at 1301.

Further, the damages claimed in this case transcend the impact of child birth.[4]  Plaintiff seeks damages from the consequences of her pregnancy, a claim which, as I understand it, is in addition to those stemming from the resulting birth itself.

Finally, the issues posed by this case are difficult and troublesome.  Like my colleagues I have agonized over them. However, I must dissent from their conclusion which, in essence, precludes review of these questions by dismissing the complaint altogether.

Accordingly, I dissent.

---

[4]It is hard to take issue with the majority's suggestion that no damages flow from the birth of a happy, normal child.  But there may be economic or non-economic consequences in a given case which flow from the decision to give birth even to a loved child, such as the pain which flows from the "stigma," at least in some areas, of being a single parent.  Thus, the mother may sustain damages well beyond that provided in a support order for the child.