Krupp, Peter B., J.
This action is before the court on defendants’ motion to dismiss the First Amended Verified Complaint[2] (“the Complaint”) for failure to state a claim under Mass.R.Civ.P. 12(b)(6) arid for violation of the Massachusetts Anti-SLAPP statute, G.L.c. 231, §59H. After hearing and consideration of the arguments and cases provided by counsel, the motion is DENIED.
BACKGROUND
The Complaint is lengthy. It runs to more than 70 paragraphs with factual allegations about difficult family interactions and individual experiences and injuries over more than a decade. These allegations, and the reasonable inferences to be drawn therefrom, can be distilled to their essence as follows for purposes of defendants’ motion.[3]
Plaintiff Mark Anthony Mansfield had a relationship with defendant Jacquelyn Neff (“Jacquelyn”). When Jacquelyn became pregnant in 2001, she “repeatedly represented” to plaintiff that he was the biological father of the child. Plaintiff had no reason *617 to doubt Jacquelyn, although they were not then married. After Jacquelyn gave birth to a boy, Ryan, plaintiff signed the child’s birth certificate as the father based on Jacquelyn’s representations of his biological paternity.
In the ensuing years, plaintiff took numerous steps in reliance upon Jacquelyn’s representations—repeated by Jacqueline’s parents, defendants Patricia Neff and Thomas P. Neff (“Patricia and Thomas”)—that he was Ryan’s biological father. These steps included making representations that he was Ryan’s biological father when he entered the Marines, and admitting that he was the child’s father in various Probate Court proceedings. Jacquelyn, too, represented to the Marines that plaintiff was Ryan’s “natural father.”
In April 2005, despite knowledge of Jacquelyn’s drug addiction, plaintiff married Jacquelyn as a result of great pressure from Patricia and Thomas “to ‘do the right thing’ and legitimize the Minor Child.” The marriage apparently did not last long.[4] Patricia and Thomas ultimately obtained custody of Ryan.
Over the years, plaintiff has paid child support for Ryan and at various times has sought to have the child support obligation modified. He has had intermittent and varying levels of contact with Ryan over the years.
In October 2012, plaintiff took the position with the Probate Court that he was not Ryan’s biological father. In February 2013, plaintiff, Jacquelyn and Ryan all submitted to a genetic marker paternity test. The results of that test, which issued in early March 2013, indicated conclusively that plaintiff was not Ryan’s biological father.
Plaintiff “experienced physical manifestations of stress, including but not limited to, lost sleep, significant anxiety, body aches and depressive symptoms . . . since learning that [Jacquelyn, Patricia and Thomas] have concealed the truth regarding [Ryan]’s paternity from him for all of these years.”[5] He alleges that he has also incurred monetary damages as a result of supporting both Jacquelyn and Ryan over the years.
Plaintiff filed this action in July 2013. He brings an array of claims against Jacquelyn, Thomas and Patricia for fraud or misrepresentation, fraudulent inducement, intentional and negligent infliction of emotional distress, and negligent misrepresentation. Defendants move to dismiss all counts on res judicata or collateral estoppel principles, arguing that plaintiff has been adjudicated as a matter of probate law to be Ryan’s father and he cannot now claim otherwise. They also seek to dismiss plaintiffs claims as violating the Anti-SLAPP statute. I address each of these claims in turn.
DISCUSSION
There is no question that plaintiff has been adjudicated by his own admission to be Ryan’s father as a matter of law. The time for challenging his admission of paternity has passed. G.L.c. 209C, §11; Paternity of Cheryl, 434 Mass. 23, 38 (2001). Certain legal obligations flow therefrom, including support. Paternity of Cheryl, which rejected as untimely a challenge to a Probate Court paternity judgment almost six years after the child’s birth, has much to say about, but ultimately does not control the disposition of, the action filed here because plaintiff does not seek to reopen or undo the judgment of paternity. Instead, plaintiff acknowledges his legal obligation to Ryan, but seeks damages for defendants’ fraudulent representations made to induce him to admit or agree to paternity in the first place.
Deciding to be a father is a life-altering choice. Fatherhood creates time and financial commitments, imposes moral obligations, creates profound life-long entanglements, and triggers the deepest human emotions (love, longing, pride, guilt, despair). The “decision to have a child” is “momentous,” according to Elizabeth Stone, a professor at Fordham University; “(i]t is to decide forever to have your heart go walking around outside your body.”[6] See also Rivera v. Minnich, 483 U.S. 574, 584-85 (1987) (‘The judgment that a defendant is the father of a particular child is the pronouncement of more than mere financial responsibility. It is also a declaration that a defendant assumes a cultural role with distinct moral expectations . . . [Fatherhood] has . . . the potential to set in motion a process of engagement that is powerful and cumulative, and whose duration spans a lifetime”).
When the decision to admit to paternity is made, and actions taken, based on intentionally or negligently false representations of biological paternity, a tort action may lie. Many courts have recognized a tort of paternity fraud or have applied traditional tort claims in the context of false representations of biological paternity. See, e.g., Dier v. Peters, 815 N.W.2d 1, 14 (Iowa 2012); Denzilc v. Denzik, 197 S.W.3d 108, 111-12 (Ky. 2006); G.A.W., III v. D.M.W., 596 N.W.2d 284, 289-90 (Minn.App. 1999); Miller v. Miller, 956 P.2d 887, 902-05 (Okla. 1998). The court and the parties have found no such case in Massachusetts. But no separate tort and no prior Massachusetts case is necessary; in its essence, this is a garden-variety claim for negligent or intentional misrepresentation. There are no Massachusetts cases of which the court is aware which bar claims of misrepresentation, fraud or intentional or negligent infliction of emotional distress in connection with a woman (or her parents) knowingly making false statements of paternity to induce a man to assume the obligations of a father.[7] Any public policy restriction on the scope of a common-law remedy should be for the legislature or an appellate court in the first instance.
Because of substantial concerns about the impact on the child, there are important limits on how long a man may have to contest his admission of paternity. Paternity of Cheryl, 434 Mass, at 34, 38. Such limits, however, do not further constrict the limitations period *618 on, or foreclose, a tort claim seeking damages based on a woman inducing a man to agree to paternity on false pretenses.[8]
Plaintiffs claim also is not barred by the anti-SLAPP statute. This is not a case in which plaintiffs claims are based on, or that have no substantial basis other than, petitioning activity. Fabre v. Walton, 436 Mass. 517, 522 (2002); Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 167-68 (1998). Instead, this case is based upon misrepresentations which occurred outside the scope of petitioning activity. Even if some measure of damages is based upon or derived from petitioning activity or orders originating in the Probate Court, plaintiff alleges other damages which are outside the province of Probate Court orders. The proper measure of damages will have to await another day.[9]
For these reasons, it is ORDERED as follows:
ORDER
Defendants’ Motion to Dismiss and Special Motion to Dismiss Pursuant to Mass. Gen. L. Ch. 231, §59H (Docket #9) is DENIED.

Although the motion references “Plaintiffs Complaint,” defense counsel made clear at argument that it applies equally to the First Amended Verified Complaint.

The court accepts these allegations as true for purposes of deciding the motion to dismiss. Iannacchtno v. Ford Motor Co., 451 Mass. 623, 636 (2008). When presented with a Rule 12(b)(6) motion, the court must accept as true the well pled factual allegations of the complaint and draw reasonable inferences from those facts in favor of the plaintiff. Id. To survive a Rule 12(b)(6) challenge, the complaint must contain factual allegations which, if true, bring a right to relief above the speculative level, id., “plausibly suggesting (not merely consistent with)” a basis for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).

Although plaintiffs relationship with Jacquelyn allegedly soured quickly, plaintiff did not formally seek a divorce until April 2010.

Plaintiff also alleges he has suffered various service-related illnesses and hospitalizations since returning from active duty in Iraq.

Available at http://www.parents.com/baby/new-par-ent/emotions/motherhood-fatherhood-quotations/ (last visited Jan. 21, 2014).

But see, e.g., Day v. Heller, 653 N.W.2d 475, 479 (Neb. 2002) (as a matter of public policy, ex-husband may not bring claim against ex-wife based on her misrepresentations that he was the biological father of a child born during their marriage).

In their motion, defendants do not argue that plaintiffs claims are barred by the three-year limitations period for tort actions. See G.L.c. 260, §2A. Nor can the court assess that factual issue. On the existing record, the court cannot determine whether plaintiff knew or should have discovered earlier that he was not Ryan’s biological father or that any of the defendants knowingly or negligently misrepresented such material facts to him. Compare Paternity of Cheryl, 434 Mass. at 24, 32-33, with Complaint ¶57 (“As the Minor Child has grown, the Plaintiff has noticed no physical similarities between the Minor Child and himself’), ¶58 (“By happenstance, the Plaintiff reviewed the Facebook page of a former work colleague and close friend of [Jacquelyn] and was for the first time struck by the physical similarities between him and the Minor Child” and between “this gentleman’s son and the Minor Child”). It appears that genetic testing for paternity was generally available long before Ryan’s birth in 2001, Paternity of Cheryl, 434 Mass. at 26-28, 32, but the reasons it was not sought earlier are not clear from the Complaint.

See, e.g., Dier v. Peters, 815 N.W.2d at 6-14 (while plaintiff could not obtain reimbursement for court-ordered child support payments, father could seek damages for monies voluntarily paid based on fraudulent representation of paternity); Nagy v. Nagy, 210 Cal.App.3d 1262, 1269-70, 258 Cal.Rptr. 787 (1989) (where only damages alleged were “for developing an intimate relationship with a child and performing all the acts of a parent” they were insufficient to state an action for fraud).